79 N.J. Super. 38 (1963)
190 A.2d 212
HARRIS EQUIPMENT & SERVICE CO., PLAINTIFF,
v.
SAMSON TRAILER MANUFACTURING CORP., DEFENDANT.
Superior Court of New Jersey, District Court, Burlington County.
Decided March 25, 1963.
*39 Messrs. Cobbin, Farr & Reifsteck (Mr. William E. Reifsteck, appearing), attorneys for plaintiff.
Mr. David M. Satz, United States Attorney (Mr. Giacomo Rosati, Assistant United States Attorney, with whom appeared Mr. Mitchell J. Rabil of the North Carolina Bar, admitted pro hac vice, appearing), for the United States of America.
WOOD, A.C., III, J.C.C.
The United States assessed wage and excise taxes against defendant Samson Trailer Manufacturing Corp. (hereinafter Samson), for the years 1961 and 1962 in the total sum of $7,913.60 plus interest. Notices of lien for the taxes in question were filed with the County Clerk of Burlington County on December 22, 1961, and March 7 and 8, June 13 and July 26, 1952. Internal Revenue Code (1954) sec. 6323, 26 U.S.C.A. § 6323; N.J.S.A. 46:16-13.
*40 Plaintiff Harris Equipment & Service Co. (hereinafter Harris), recovered a judgment against Samson for the sum of $719.27 damages and costs. Judgment was entered July 24, 1962. On August 16, 1962 execution on said judgment was issued to Elmer Earl, sergeant at arms of this court, and on August 21, 1962, he levied on certain goods and chattels of Samson at its place of business in Maple Shade, New Jersey. On September 18, 1962 he gave notice of sale, and on October 11, 1962 sold the goods and chattels at public sale. After announcing that the sale was subject to existing liens, he sold and struck off the goods to the highest bidder. The total proceeds of sale amounted to $376.
Immediately upon the conclusion of the sale, a representative of the United States Internal Revenue Service served upon the sergeant at arms a notice of levy setting forth that Samson was then indebted to the United States, as per schedule in said notice set forth, in the total sum of $8,250.01, and further reciting as follows:
"You are further notified that demand has been made upon the taxpayer for the amount set forth herein, and that such amount is still due, owing, and unpaid from this taxpayer, and that the lien provided for by Section 6321, Internal Revenue Code of 1954, now exists upon all property or rights to property belonging to the aforesaid taxpayer. Accordingly, you are further notified that all property, rights to property, moneys, credits and bank deposits now in your possession and belonging to this taxpayer (or with respect to which you are obligated) and all sums of money or other obligations owing from you to this taxpayer are hereby levied upon and seized for satisfaction of the aforesaid tax, together with all additions provided by law, and demand is hereby made upon you for the amount necessary to satisfy the liability set forth herein, or for such lesser sum as you may be indebted to him, to be applied as payment on his tax liability."
At the same time the representative served on the sergeant at arms a document denominated a "Final Demand" for payment of said sum in his hands. The sergeant at arms properly refused to release said funds pending a determination by the court as to which claimant is entitled thereto. Stebbins v. Walker, 14 N.J. Law 90 (Sup. Ct. 1833).
*41 Plaintiff Harris now petitions this court for an order requiring the Sergeant at arms to pay over the proceeds of said execution sale proceeds to it. The matter is before the court on order to show cause why the sergeant at arms should not be ordered to pay said monies to plaintiff in accordance with the prayer of the petition. The United States opposes the petition and claims the fund under its notice of levy and final demand.
It is apparent plaintiff concedes that the lien of the United States is prior to its judgment and execution. Plaintiff, nevertheless, argues that since the sergeant at arms announced that the goods and chattels were to be sold subject to existing liens, it is entitled to receive the proceeds of the execution sale and the United States must pursue its remedy against the chattels themselves in the hands of the purchasers or subsequent holders thereof.
The United States, on the other hand, contending that its lien, is a prior lien on the property of the judgment debtor, attached at once to the proceeds of the sale in the hands of the sergeant at arms, representing as it does property or the right to property belonging to the taxpayer (Samson) within the meaning of Internal Revenue Code sec. 6321, 26 U.S.C.A. § 6321. The United States therefore argues that it is entitled to payment of the proceeds of sale, although the sale was conducted at the instance of the judgment creditor.
Surprisingly, the precise point here at issue does not appear to have been decided by the courts.
Plaintiff cites as support for its position Mushback v. Ryerson, 11 N.J. Law 346 (Sup. Ct. 1830), and Ersa, Inc. v. Dudley, 234 F.2d 178 (3 Cir. 1956). In the former case the court upheld the amercement of a sheriff for applying the proceeds of an execution sale of real estate to the discharge of previous liens, holding that
"A sheriff must apply the money arising from a sale to the execution under which he sells. He cannot apply it to the discharge of previous liens."
*42 In the latter case a restaurant owner owed unemployment taxes to the Commonwealth of Pennsylvania and wage and Social Security taxes to the United States. The Commonwealth issued execution, levied on the restaurant and its equipment, and caused them to be sold under its execution. The State bid the property in and then sold it to Ersa Inc. The execution and sale took place subsequent to the filing of notice of the federal lien. The federal court held that the federal lien was prior and that the sale of the property under the Commonwealth's lien did not destroy the federal lien, the subsequent purchaser acquiring the property subject thereto.
Plaintiff, on the basis of the Ersa case, reasons that the execution sale did not destroy the federal lien on this personalty and that it follows that the United States must pursue its remedy against the property in the hands of the subsequent purchaser. It further argues that the sergeant at arms is without any authority to pay the proceeds of the sale to anyone but the judgment creditor. Mushback v. Ryerson, supra.
For the reasons hereafter stated I am impelled to conclude otherwise.
The federal lien arises by virtue of an act of Congress under specific grant of authority by the United States Constitution. The question of its relative priority is a federal question, United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955). The standing of such lien may not be impaired without the consent of Congress. United States v. City of New Britain, 347 U.S. 21, 74 S.Ct. 367, 98 L.Ed. 520 (1954).
In the Ersa case, supra, the court was dealing with liens on both real and personal property and, furthermore, with a sale thereof made under a lien held by a state. In this instance we are dealing with personal property only, that property consisting of chattels difficult to follow and trace into the hands of subsequent purchasers. It is one thing to hold, as did the court in Ersa, that the property sold remains subject to the prior lien of the United States, and quite another to *43 say that this constitutes the sole remedy and redress of the United States. The Ersa case did not go so far.
On the other hand, in United States v. Blackett, 220 F.2d 21 (9 Cir. 1955), a liquor license and a stock of liquor were sold under an execution and levy which were subsequent and subordinate to federal tax liens. The United States brought an action in the United States District Court praying that the proceeds of the execution sale, both of the stock of liquor and also of the liquor license, be paid to the United States for credit on the delinquent taxes. The District Court ordered that the proceeds of sale of the stock of liquor be paid to the United States but that the proceeds of sale of the liquor license be paid to the judgment creditor. Interestingly, this judgment was grounded not on the theory that the government's lien could follow the license into the hands of the new purchaser but rather on the ground that the license was not subject to lien and that the sale was an "in personam supplementary proceeding" by the judgment creditor. The court reasoned that the liquor license transfer, being subject to veto by the state under California law, the license was not "property and right to property" under the Internal Revenue Code. The Court of Appeals reversed and held that the proceeds of the sale were payable to the United States. The court said in part:
"It is true that the sale was precipitated by the judgment creditor, but whatever was received through the sale became the property of the vendor-owner, subject, as any other property belonging to him, to valid liens thereon in the order of their priority, in this case, first the tax lien, second the judgment creditor's lien."
The above reasoning seems sound and seems also to be clearly applicable to the present case.
The Internal Revenue Code, 26 U.S.C.A. § 6321, provides
"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax or assessable penalty, together with any costs *44 that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."
The property sold here was the property of Samson, the taxpayer-judgment debtor. It was sold as the debtor's property. The proceeds of sale therefore belonged to the debtor, subject only to the satisfaction of valid liens. Had there been a surplus, it would obviously have been payable to the judgment debtor. Clearly then, these chattels were property to which the federal lien attached. As Judge Parker well expressed it in United States v. City of Greenville, 118 F.2d 963, 965 (4 Cir. 1941):
"After the lien provided by the statute attaches, the property has in a sense two owners, the taxpayer and, to the extent of the lien, the United States."
The court added:
"Whether viewed as an interest of the federal government in the property to which it [the tax lien] has attached or as an instrumentality of the federal government for the collection of taxes due that government, it is beyond impairment by the exercise of state power. In the first view, it must be remembered that property of the federal government may not be taxed by the states without the consent of Congress, and in the second, that Congress has power to lay and collect taxes of the sort here involved and to make all laws necessary and proper for that purpose, and that such laws, when made, are the supreme law of the land. Constitution Art. 1 § 8, Art. VI." (citing, inter alia, McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (1819).)
It follows necessarily that the lien of the United States may not, without its consent, be impaired by an execution creditor acting under color of a state law. The federal lien stands, regardless of the state rule (assuming same to be applicable) that a sheriff or constable must apply the proceeds of an execution sale only to the execution under which he sells. Mushback v. Ryerson, supra.
Plaintiff argues that to permit the Government to seize the proceeds of this sale is, in effect, to permit the Government to *45 "have its cake and eat it"  to take the proceeds of sale, but nevertheless to preserve its lien on the subject property intact so that the latter may still be seized in the hands of purchasers. This, it is argued, is unfair and inequitable. Moreover, it is argued, the sale was announced as being subject to existing liens, and therefore this must have been reflected in the purchase price received. The purchaser, it is said, must have discounted the purchase price in the light of the Government's lien and purchased only the "equity" of the taxpayer in the property.
I cannot agree with this conclusion. Assuming that chattels sold "subject to existing liens" might logically be supposed to bring a lower price than property sold "free of liens," it by no means follows that the Government should not, in the exercise of its paramount power to collect and to protect the federal revenue, be able to reach the proceeds of a sale such as this, even though the sale was held by the efforts and at the instance of the judgment creditor.
The Internal Revenue Code 26 U.S.C.A. § 6323 is liberal in granting priority to the liens of judgment creditors (among others) perfected prior to the liens of the United States. The guiding principle is that "first in time is the first in right." United States v. City of New Britain, supra. But here the federal lien was unquestionably first in time and therefore first in right. Notice thereof had been duly filed in the county clerk's office, and plaintiff here was thus chargeable with notice thereof. It chose to levy on and hold an execution sale of the taxpayer's property in the face of this notice, and it cannot complain of the result. The sale was actually in derogation of the paramount rights of the United States. The judgment creditor may not, in the face of the admitted priority, deprive the United States of its continuing lien. Cf. Jones v. Mustard, 49 Del. 84, 109 A.2d 789 (Del. Super. Ct. 1954); Glass City Bank v. U.S., 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945).
At the argument on the present application I raised the question whether the United States, having elected to proceed *46 against the proceeds of the execution sale, might nevertheless also proceed against the subject property. However, a determination of this issue is not called for here. Suffice it to say that the Government cannot, by the unilateral action of a junior judgment creditor, be compelled to pursue chattels, which are mobile and very difficult of identification, into the hands of others who choose to purchase them at an execution sale. So to hold would be to place a wholly unwarranted burden on the government and to raise substantial obstacles to the efficient and effective collection of delinquent taxes, to the impairment of the federal revenue.
The application of Harris must be denied. An order may be submitted directing the sergeant at arms to pay the proceeds of the execution sale in his hands, after deduction therefrom of his proper fees and commissions, to the United States of America.