Robert A. MILLER; Kody Miller, By Robert A. Miller; Robert Miller, By Robert A. Miller; Carey Miller; Jeremiah Justin Miller, By Carey Miller; Rick Miller; James Miller; Plaintiffs–Appellees,

v.

Tony ALAMO, a/k/a Tony Fernando, a/k/a Tony Fernando Alamo, a/k/a Bernie Lazar, a/k/a Bernie Hoffman, a/k/a Bernie Lazar Hoffman, a/k/a Boris Lazar, a/k/a Papa Tony, individually and as officer and director of Tony & Susan Alamo Foundation & Music Square Church; Defendant–Appellee,

Timothy J. Leathers, Commissioner of Revenues, Arkansas Department of Finance and Administration, Intervenor,

United States of America, Intervenor–Appellant.

No. 91–3116.

United States Court of Appeals, Eighth Circuit.

Jan. 5, 1993.

Jonathan S. Cohen, Washington, DC, argued (Shirley D. Peterson, Gary R. Allen and Janet Kay Jones, on brief), for appellant.

Richard Wile, Pittsburgh, PA, argued (Peter N. Georgiades, Lazar Palnick and Norman Wilkinson, on brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

In *Miller v. Alamo*, 975 F.2d 547 (8th Cir.1992), we affirmed the district court's order awarding the Millers the proceeds of a series of execution sales and denying the United States' attempt to assert a tax lien against those proceeds. The property that was sold consisted primarily of personal property owned by Alamo (or his alter egos) that was subject to liens from both the Millers and the government. The government asserted its lien against the proceeds from the sales, and we affirmed the district court's judgment in favor of the Millers because the government's lien could attach only to property if Alamo had an ownership interest in the property, and Arkansas law did not grant him an interest in the sales' proceeds. Pending before the court is the Millers' motion to recover their attorneys fees and costs associated with the government's appeal, which motion has been resisted by the government. We grant the Millers' motion in part.

## I. ENTITLEMENT TO FEES

The parties agree any rights the Millers have to recover their expenditures must arise from 26 U.S.C. § 7430(a) (1988), which provides that a prevailing party in any court action brought "in connection with the determination, collection, or refund of any tax" may recover their reasonable costs of litigation. A prevailing party, in pertinent part,[1] is defined as

> any party in any proceeding to which [§ 7430(a)] applies (other than the United States or any creditor of the taxpayer involved)—
>
> (i) which establishes that the position of the United States in the proceeding was not substantially justified,
>
> \*      \*      \*      \*      \*      \*

26 U.S.C. § 7430(c)(4)(A) (1988). The government contends the Millers are not prevailing parties because they were Alamo's creditors and because the government's litigation position was substantially justified. We reject both contentions.

### A. Creditors of the Taxpayer

There is a paucity of case law addressing this aspect of the definition of "prevailing party." The two leading cases come from the Ninth Circuit. *Newnham v. United States*, 813 F.2d 1384 (9th Cir.1987) involved an individual who was a party to a contract with the taxpayer for the sale of a home. The taxpayer "repudiated the contract before the close of escrow," whereupon Newnham successfully sued in state court for specific performance. *Id.* at 1385. The government, insisting that the home became the taxpayer's property after he repudiated the contract, asserted a tax lien against the property. After determining that the IRS had no rights with respect to the home, then-Circuit Judge Kennedy discussed whether Newnham was entitled

---

[1] The other requirements to be a prevailing party are not at issue in this case.

to recover her fees and costs associated with defending against the IRS' efforts. He emphasized that "Newnham's interest in the property was not that of a lien creditor," and concluded that because she was the owner of the property, she was not the taxpayer's creditor. *Id.* at 1386–87.

The Ninth Circuit returned to this issue in *Bermensolo v. United States,* 883 F.2d 58 (9th Cir.1989). The Bermensolos possessed a security interest in the taxpayer's bank account and successfully defeated the IRS' efforts to collect the proceeds in the account to satisfy its tax lien on the taxpayer's property. In addition to granting the Bermensolos judgment on the merits, the district court awarded them attorneys fees. *Id.* at 59. The Ninth Circuit reversed the attorneys fee award because the Bermensolos held a security interest in the property under dispute, thereby rendering them creditors of the taxpayer. The court distinguished *Newnham* by emphasizing that Newnham was the owner of the property and that her interest in the property did not arise from her assertion of a secured interest in that property. *Id.* at 60.

■ These two cases, considered together, indicate that a party's status as a creditor of the taxpayer is determined not only by the party's relationship with the taxpayer, but also by the party's interest in the property in dispute. Both Newnham and the Bermensolos were creditors of taxpayers in the sense that taxpayers owed something to them; however, Newnham had an ownership interest in the property the government sought to execute upon, whereas the Bermensolos were only lienholders. This distinction is consistent with the House Report's statement that "awards would not be made to creditors of a taxpayer in interpleaders, wrongful levy actions, and lien priority cases." H.R.Rep. No. 404, 97th Cong., 1st Sess. at 12 (1981). Though these are intended to serve only as examples, all three situations described in the Report are similar in that they are disputes that resolve competing claims arising from

liens and secured interests;[2] however, if there is no such claim, the party is not a creditor.

■ We conclude that though Alamo did (and does) owe money to the Millers, the Millers are not Alamo's creditors within the meaning of § 7430 because the Millers' interest in the proceeds of the Marshall's sale was not premised on a lien or security interest—under Arkansas law, the Millers were the owners of the entire fund. *Miller,* 975 F.2d at 551–552. Though the IRS has, throughout this litigation, premised its claim on the varying lien rights of the parties, those lien rights are irrelevant to the disposition of this suit. *Id.* at 550. The Millers were creditors with regard to the jackets that were sold to generate the funds at issue in this case, as their rights with respect to those jackets arose from a lien. With regard to the money, however, they are owners in the same sense that Newnham was the owner of the house.

### B. Substantially Justified

■ The phrase "substantially justified" has not received much judicial scrutiny within the context of § 7430; however, the same phrase has been discussed within the context of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (1988), and we believe the discussions of that concept with regard to the EAJA are relevant to our discussion of § 7430. The burden lies with the government to demonstrate that its position was substantially justified, *Welter v. Sullivan,* 941 F.2d 674, 676 (8th Cir.1991); *Securities & Exchange Comm'n v. Comserv Corp.,* 908 F.2d 1407, 1411 (8th Cir.1990); that is, the IRS must demonstrate its position was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

■ This case is one in which the "attorney's fee determination will involve a judgment ultimately based upon evaluation of

---

2. *But see Prudential–Bache Sec. v. Tranakos,* 593 F.Supp. 783, 785, 787 (N.D.Ga.1984) (stakeholder who filed an interpleader action and claimed

no interest in the stake held to not be a creditor of the taxpayer).

the purely legal issue governing the litigation." *Id.* at 560, 108 S.Ct. at 2547. As noted in our opinion in this case, the government had no interest in the proceeds unless Alamo had an interest, granted by Arkansas law, in the proceeds. *Miller,* 975 F.2d at 551–553. However, the government seemed to take the primary position that it had rights in the proceeds simply because it had a superior lien position with respect to the property that was sold to generate the proceeds at issue in this case. The government did take the secondary position that it had a direct claim on the proceeds, but at oral argument specifically denied that it took the position that the money belonged to Alamo. This being the case, the sole basis for the government's claim was nonexistent. We also note that the government failed to present any indication that Arkansas law granted Alamo any ownership interest in the proceeds, thereby indicating no effort on the government's part to satisfy the requirements of a successful claim.

The government contends its position was substantially justified because it relied on three prior cases that reached results similar to the result it sought here. The first of these cases was *Blackett v. United States,* 220 F.2d 21 (9th Cir.1955). In *Blackett,* the government asserted its tax lien against the proceeds from the execution sale of the taxpayer's liquor license. The court held that though "the sale was precipitated by the judgment creditor, ... whatever was received through the sale became the property of the [taxpayer], subject, as any other property belonging to him, to valid liens thereon in the order of their priority...." *Id.* at 23. Though this passage may appear to support the IRS' position, it was unreasonable for the IRS to rely on *Blackett* in appealing the district court's judgment in this case. First, *Blackett* made no mention of state law; indeed, it was not until after *Blackett* was decided in 1955 that the Supreme Court clearly expressed the importance of looking to state law to determine whether the taxpayer had any interest or rights with respect to the property at issue. *Acquilino v. United States,* 363 U.S. 509, 512–13, 80

S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960); *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). Even though the Court had hinted that such an inquiry was to be conducted, *e.g., Morgan v. Commissioner,* 309 U.S. 78, 80, 60 S.Ct. 424, 425, 84 L.Ed. 1035 (1940), it had never squarely held as such. Moreover, *Blackett,* is totally devoid of any discussion of state law, and thus fails to conduct the analysis now required by *Acquilino* and *Bess,* both of which require the analysis begin by determining whether state law bestows any rights with respect to the property upon the taxpayer. Finally, even if *Blackett* had conducted that analysis, we would still have expected the government to conduct a similar analysis of Arkansas law; however, at no time during this appeal did the government assert any theory explaining how Arkansas law bestowed Alamo any right in the proceeds.

The second case relied upon by the government is *Harris Equip. & Serv. Co. v. Samson Trailer Mfg. Corp.,* 11 A.F.T.R.2d 1288, 79 N.J.Super. 38, 190 A.2d 212 (Burlington County (N.J.) County Ct.1963). This case involved a situation similar to the one present here and in *Blackett,* and relied heavily upon the Ninth Circuit's opinion in that case. The court concluded that because the property sold belonged to the taxpayer, "[t]he proceeds of sale therefore belonged to the debtor, subject only to the satisfaction of valid liens." *Id.* at 1290, 79 N.J.Super. 38, 190 A.2d 212. Inasmuch as this is a decision from a New Jersey court, we must accept this as the law of New Jersey. However, the law of New Jersey is not the law of Arkansas; relying on *Harris Equip.* does not advance the government's position that Arkansas law views the proceeds of the sale as belonging to the debtor.

Finally, the government relies on the decision in *Byers v. Sheets,* 643 F.Supp. 695 (W.D.Mo.1986) to demonstrate that its position was substantially justified. In *Byers,* the district court correctly recognized that "[w]hether the taxpayer has 'property' or 'rights to property' to which a federal lien for unpaid taxes can attach is determined

by state law." *Id.* at 697 (citation omitted). The court went on to hold the taxpayer/debtor had a property interest in the amount of money in excess of the underlying debt, and that the government's tax lien could attach to that surplus. *Id. Byers* does not hold, as is the government's position in this case, that the tax lien can attach to *all* the proceeds.

In sum, the government has relied on cases that reach the result it desires, yet it is obvious those decisions either do not conduct the appropriate analysis or do not involve Arkansas law. This alone does not make the government's position unreasonable; however, this fact, combined with the government's failure to follow the analysis prescribed in *Bess* and *Acquilino* and explain why Arkansas law granted property rights to Alamo, prevents us from concluding the government's position was substantially justified.

## II. AMOUNT OF FEES

The Millers are entitled to recover their attorneys fees because we have determined the Millers are not Alamo's creditors within the meaning of § 7430 and the government's position was not substantially justified. We now examine the amount of fees requested, which is challenged by the government on a variety of grounds. We hold that some of the government's contentions have merit.

■ The government first faults the Millers' request that their attorneys be reimbursed at the rate of $120 per hour. 26 U.S.C. § 7430(c)(1)(B)(iii) (1988) specifies that attorneys fees "shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate." In discussing the EAJA, which contains an identical provision, we held the Consumer Price Index (CPI) constituted proper proof of the increased cost of living and that an increase in the fee awards based on the CPI is proper. *Johnson v. Sullivan,* 919 F.2d

503, 504 (8th Cir.1990). The CPI reflects that the cost of living has increased 29% since Congress passed the provision allowing for a cost of living adjustment. Therefore, the $75 base fee award described in the statute should be increased by 29%, giving an hourly fee of $96.75. However, the Millers have not presented any special factors that would justify further enhancement, so we will award the Millers attorney fees at the rate of $96.75 per hour.

■ The government also contends the amount of hours expended, 274, is excessive because some of the time was devoted to issues that were rejected by this court [3] and because an inordinately large number of hours were spent preparing for an appeal on issues that (presumably) had already been researched, discussed, and thought out by the Millers' attorneys during the district court proceedings. We find a great deal of merit in the government's position. Our perusal of the timesheets reveals that approximately 60 hours involved time spent on unsuccessful motions, matters related to other parties, or reflected time charged by more than one attorney for attending the same meeting. Fees for these 60 hours will not be granted.

Our examination of the time sheets also reveals over 118 hours was spent researching, drafting, preparing, reviewing or revising the Millers' brief on appeal. Given the nature of the issues involved in this appeal—all of which had already been researched to prepare for the proceedings in district court—we believe 118 hours to be excessive. We will grant fees for only 60 hours of this work. The remaining 95 hours were spent on attorney conferences, telephone calls, and reviewing correspondence from the government and this court. Once again, we find this to be an unusually high number of hours, and will grant fees for only 60 hours of this time. In sum, we will grant attorney fees for 120 hours of work at the rate of $96.75 per hour, for a total fee award of $11,610.00.

---

3. Particularly, the government points to our rejection of the Millers' claim the appeal was moot and that the district court's decision was not final. *See Miller,* 975 F.2d at 549–551.

■ Next, the government contends § 7430 does not allow for reimbursement of costs such as travelling, mailing, and photocopying, and asks us to disallow the Millers' request for $1,335.99. We decline to do so. Costs such as these are inevitable in any litigation, and are reasonably considered "reasonable litigation costs," which may be recovered pursuant to 26 U.S.C. § 7430(c)(1) (1988). *See United States v. Sam Ellis Stores, Inc.*, 768 F.Supp. 286, 290 (S.D.Cal.1991).[4] As the Seventh Circuit explained with regard to the EAJA,

> [t]he Act seeks to shift the cost of the winning party's lawyer (in cases within the intended scope of the Act) to the losing party; and that cost includes the out-of-pocket expenses for which lawyers normally bill their clients separately, as well as fees for lawyer effort. The Act would therefore fall short of its goal if it excluded those expenses.

*Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir.1984). We believe this reasoning applies equally well to § 7430 and therefore hold these costs are recoverable.

■ Next, the government challenges the Millers' request for reimbursement, at a rate of $40 per hour, for 3.5 hours of work performed by paralegals. Work done by paralegals is compensable if it is work that would have been done by an attorney. If such hours were not compensable, then attorneys may be compelled to perform the duties that could otherwise be fulfilled by paralegals, thereby increasing the overall cost of legal services. *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir.1988), *aff'd*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). In this case, the work performed by paralegals involved going to a library to locate some cases that had been cited by the government and preparing the materials used by the attorney representing the Millers' at oral argument. We believe these are duties that, if not performed by the paralegal, would have been performed personally by the Millers' attorneys and are not purely clerical in nature; therefore, we grant the Miller's request.

■ The government challenges the Millers' request for reimbursement of the $30 fee for having the Millers' attorney admitted to the Eighth Circuit Bar. We agree that § 7430 should not be used to require the government to fund the enhancement of an attorney's versatility or capability.

■ Finally, we address the Millers' request for attorneys fees and costs associated with replying to the government's opposition to fees. With regard to the EAJA, the Supreme Court held "[t]he single finding that the Government's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' ... operates as a one-time threshold for fee eligibility." *Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 160, 110 S.Ct. 2316, 2320, 110 L.Ed.2d 134 (1990). Consequently, the Millers' are entitled to compensation for the fees and costs associated with defending against the government's fee challenge. Thus, we grant the Millers attorneys fees for 16.8 hours of work at a rate of $96.75 per hour, for a total of $1,625.40.

## III. CONCLUSION

Having concluded the Millers' are entitled to attorneys fees and costs, we grant them attorneys fees totalling $11,610.00 and costs (including expenses associated with paralegals) totalling $1,467.78, for a total award of $13,077.78.

---

**4.** Section 7430(c)(1) does specify three types of expenses that are recoverable, but specifies that these costs are "include[d]" within the category of "reasonable litigation costs." From this, we conclude that the types of expenses listed in the statute are not intended to be an exhaustive list of recoverable expenses.