Robert A. MILLER, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 3:92–0028.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 8, 1993.

Order Awarding Additional
Fees April 22, 1993.

Winston S. Evans, Evans, Jones & Reynolds, Nashville, TN, Peter Georgiades, Pittsburgh, PA, for plaintiffs.

Michael J. Martineau, for defendant.

## MEMORANDUM

WISEMAN, District Judge.

### I

The Plaintiffs in this case, the Miller family, are judgment creditors of Tony Alamo. The Millers purchased properties formerly belonging to Alamo at an execution sale, and because the United States had encumbered the properties with a tax lien, the Millers brought this suit to quiet their title in the properties. The Court previously granted the Millers' motion for summary judgment, and they are now seeking payment of statutory attorney's fees. Following a fuller explanation of the facts, the Court concludes that the Millers are entitled to statutory attorney's fees, but that their request for costs will be trimmed to account for noncompensable items.

### II

The Plaintiffs obtained a judgment in Arkansas against the evangelist Tony Alamo and his entities, and registered the judgment in this district. On July 11, 1991, the Sheriff sold properties located at 320, 322, 323 and 325 Broadway, and 1200–1202 17th Avenue South in Nashville, Tennessee, to the Plaintiffs' attorney in an execution sale. The Plaintiffs then encumbered the property with a lien in excess of a million dollars for counsel fees and expenses.

The Internal Revenue Service filed several notices of federal tax liens on the properties. Most of these were based on jeopardy assessments of income taxes owed by Tony Alamo and his late wife, and the Foundation which they controlled. Two of the assessments (Forms 668(Y)) were based on assessments against the Foundation only of employment taxes allegedly due and unpaid by the Foundation for the period from July 1, 1981, through March 31, 1986. The income tax assessments also asserted claims against Music Square Church and Twentieth Centu-ry Holiness Tabernacle as the transferees of the Alamos and the Foundation.

The Foundation, Music Square Church, and Twentieth Century brought a separate action against the IRS, seeking to remove the tax liens. The Millers intervened in that action. This Court found that the IRS failed to satisfy its burden of demonstrating that the jeopardy assessments were reasonable, and ordered the assessments to be abated. That order disposed of the income taxes assessed against the Alamos, Music Square, and Twentieth Century, but left the employment tax liens in place.

■ The Millers then brought this action to quiet their title in the properties by having the employment tax liens abated as well. The Court held that because the employment taxes were assessed against the Foundation, the liens were only valid if the Foundation had rights in the properties on which they were placed. Looking to state law to determine when one has rights in property, the Court concluded that the Foundation lost its rights in the property when a recorded conveyance to Music Square was filed. Under Tennessee law, a recorded conveyance divests the transferor of all right, title, and interest in the property, even if the conveyance was in reality fraudulent. The Government argued that the Court should take judicial notice that the various entities involved were sham corporations whose corporate form should be disregarded, and they cited three other cases in which the corporate forms were disregarded. This Court held, however, that the Government was not entitled to benefit from these rulings, and concluded that because no liens were created in the IRS's favor, the Millers' title to the properties should be quieted.

The Millers have now filed this petition for attorney's fees under 26 U.S.C. § 7430, and the Government has opposed the petition on several grounds. First, the Government argues that because the Millers are creditors of Alamo, the taxpayer, they are disqualified from being "prevailing parties" under the statute. Second, the Government argues that its position in the litigation was "sub-

stantially justified," and that by statute, the Millers are precluded from seeking attorney's fees. Finally, the Government argues that even if they are liable for fees and costs, the Millers' requested fees and costs are excessive. The Court concludes that the objections are without merit, and apart from a minor adjustment in the costs and rate, the Court grants the Miller's petition.

### III

*The Plaintiff's Status as "Prevailing Parties"*

■ 26 U.S.C. § 7430 permits the "prevailing party" in tax determination matters to recover reasonable litigation costs in connection with court proceedings brought by or against the United States. The parties do not dispute that the present case belongs to the category of cases to which § 7430 applies. To be considered a "prevailing party," the Court must find that the Plaintiffs satisfy the definition set forth in § 7430(c)(4)(A):

(A) In general—

The term "prevailing party" means any party in any proceeding to which subsection (a) applies (*other than the United States or any creditor of the taxpayer involved*)—

(i) which establishes that the position of the United States in the proceeding was not substantially justified.

26 U.S.C. § 7430(c)(4)(A) (emphasis added).

The Government argues that because the Plaintiffs are judgment creditors of the taxpayer, they are precluded from receiving their attorney's fees. The Plaintiffs argue that they are present in this action as property owners, and not as judgment creditors, and that they should not be discriminated against solely because they are both property owners and judgment creditors.

The same parties, issues, and arguments have been in this Court before. After abating the jeopardy assessments in the prior action, the Court denied the Plaintiff's request for attorney's fees. As in this case, the Plaintiffs then had argued that "because of the execution sales of the Alamo property and the concurrent transfer of title, they actually hold property and are no longer

creditors." *Tony and Susan Alamo Foundation, Inc., et al. v. United States,* No. 3:90–0901, memorandum op. at 6, 1992 WL 235873 (M.D.Tenn., July 31, 1992). This Court held that because the Plaintiffs executed their judgment liens and obtained title to the properties only after they intervened as judgment creditors, and because they remained judgment creditors of the taxpayers, they were unable to receive statutory fees.

As the Court observed last summer, with respect to the fees petition in the first case, there are few cases dealing with these issues. In both *Bermensolo v. United States,* 883 F.2d 58 (9th Cir.1989) and *Jersey State Bank v. United States,* 926 F.2d 621 (7th Cir.1991), the Courts refused petitions for attorney's fees because the petitioners were judgment creditors of the taxpayer. In *Bermensolo,* the sellers of a business who retained a security interest in the business's stock-in-trade succeeded in vacating a tax levy on the grounds that it was wrongful. The sellers then sought attorney's fees. The Tenth Circuit held that the sellers "were secured creditors of the [buyers], and their interest in the bank account arose from their attempt to collect the debt that was owed them by executing against the property that secured the debt." *Bermensolo,* 883 F.2d at 60. The Court also observed that the legislative history supported this result. The House Report on the bill enacting § 7430 states that "creditors of a taxpayer in interpleaders, wrongful levy actions, and lien priority cases" may not recover attorney's fees. H.R.Rep. No. 97–404, 97th Cong., 1st Sess. 12.

In *Bermensolo,* the Tenth Circuit distinguished the earlier case of *Newnham v. United States,* 813 F.2d 1384 (9th Cir.1987). In *Newnham,* the Plaintiff purchased a home under a contract of sale, and the seller defaulted before the close of the escrow. The Plaintiff sued for specific performance, but before that case was resolved, the IRS recorded a tax lien against the seller's property and issued a notice for its seizure. The Plaintiff won both her suit against the seller and her suit against the government, and then petitioned for attorney's fees and costs under § 7430. The government argued that because the Plaintiff was a judgment creditor

of the taxpayer, she could not be considered a prevailing party. The Ninth Circuit disagreed on the basis that the Plaintiff had an interest in the property by virtue of the written executory contract. The Ninth Circuit held that she was not precluded as a creditor, and observed that:

> Newnham's interest in the property was not that of a lien creditor. From start to finish, her interest in the property was based on the agreement for the purchase and sale of the specific parcel of land. The interest did not arise from an attempt to collect a debt by executing against property which secured it.

*Newnham,* 813 F.2d at 1386.

The Eighth Circuit has also addressed this same issue in yet another case involving the Millers and Alamo assets. In *Miller, et al. v. Alamo, et al.,* 983 F.2d 856 (8th Cir., 1993), jackets belonging to Alamo were sold in an execution sale, and the Millers and the government fought over the proceeds. The District Court and the Eighth Circuit awarded the proceeds to the Millers, who then sought attorney's fees. The parties made the same arguments they have made here regarding the interpretation of § 7430 and the importance of *Bermensolo* and *Newnham.* The Eighth Circuit observed that the litigants in both cases had been creditors "in the sense that taxpayers owed something to them; however, Newnham had an ownership interest in the property the government sought to execute upon, whereas the Bermensolos were only lienholders." *Miller, et al.,* 983 F.2d at 859. The Court thus distinguished *Newnham* from *Bermensolo* and the cases described in the House Report on the grounds that the latter "are disputes that resolve competing claims arising from liens and secured interests; however, if there is no such claim, the party is not a creditor." *Id.* Therefore, "though Alamo did (and does) owe money to the Millers, the Millers are not Alamo's creditors within the meaning of § 7430 because the Millers' interest in the proceeds of the Marshall's sale was not premised on a lien or security interest—

under Arkansas law, the Millers were the owners of the entire fund." *Id.*

As the Plaintiffs argue, if the creditor's exception applies to a creditor who is asserting his interest as a property owner, then it penalizes that person just because he also happens to be a creditor. If a third party had come in and bought the property at the execution sale, they would be able to recover fees incurred in quieting their title; but a creditor who purchases at such a sale would be unable to recover theirs. This would tend (albeit marginally) to discourage judgment creditors from bidding at execution sales, and would depress the prices obtained for levied property.

On the other hand, if one looks simply at the form of the petitioner's claim on the property at issue (i.e., if one focusses on whether it's a judgment lien or fee simple title), then the availability of attorney's fees is fortuitous—if a lienholder can perfect title before having to bring suit, then they get attorney's fees. Because of this dilemma, and because the line between lienholders and owners is quite vague, the creditor's exception is difficult to apply to these situations.

However, to return to the case at hand, the Court finds that the best course is to adopt the Eighth Circuit's argument that a property owner who also happens to be a judgment creditor should not be precluded from recovering attorney's fees when he sues as a property owner. The present case is distinguishable on the basis of timing from *Bermensolo, Jersey State Bank,* and the prior dispute in this Court between the Millers and the IRS. In this case, the Plaintiffs sued as property owners, and have not sought to collect on a judgment. There is no need or reason to look back to the events which occurred before they filed suit to determine whether they acquired their title because of their attempts to collect on a judgment. Nor is their status as judgment creditors of Alamo (for the remainder of his debt to them) relevant to the disposition of the property involved in this case, which involved Foundation tax liability.[1] The Court concludes,

---

1. The Plaintiffs stated in their petition that "at one time, the Millers were mere 'creditors of the taxpayer involved' with respect to the five prop- erties." Plaintiff's Brief, at 5. Ironically, they were in fact only creditors of the Alamos, and never were creditors of the Foundation, which

therefore, that they are not precluded from recovering attorney's fees and costs merely because they are "creditors of the taxpayer."

*"Substantial Justification" for the Government's Position*

■ As quoted above, the statute requires that in order for the Plaintiffs to recover attorney's fees, they must "establish[ ] that the position of the United States in the proceeding was not substantially justified." 26 U.S.C. § 7430(c)(4)(A). The Plaintiffs argue that the Government's claim that it should benefit from the rulings of other courts regarding the "alter ego" status of the Alamo entities was a specious one, and quotes the Court's earlier opinion in this case:

> The United States has not provided this Court with any authority to support its claim that it should be allowed to benefit from these rulings.

*Miller v. United States,* memorandum op. at 14. The Plaintiffs also observe that the Government not only failed to provide authority for this contention, but that it also knew that the Western District of Arkansas had already rejected this same position in *Georgiades v. Martin,* No. 92–2001, on which this Court relied in its opinion.

The Government responds by describing their (rejected) reliance on the three other court decisions which held that the Alamo entities were shams, and points out that the Millers, who participated in those cases, knew at the time their attorney purchased the properties that the properties' conveyance to Music Square and Twentieth Century had been fraudulent. The Government argues that its position should not be found to have been substantially unjustified just because it failed to provide a basis for applying these other decisions to this case.

In the Eighth Circuit case, *Miller, et al. v. Alamo, et al.,* cited above, the Court described well the legal analysis used to assess the Government's justification:

> The phrase "substantially justified" has not received much judicial scrutiny within the context of § 7430; however, the same phrase has been discussed within the context of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (1988), and we believe the discussions of that concept with regard to the EAJA are relevant to our discussion of § 7430. The burden lies with the government to demonstrate that its position was substantially justified, *Welter v. Sullivan,* 941 F.2d 674, 676 (8th Cir.1991); *Securities and Exchange Comm'n v. Comserv Corp.,* 908 F.2d 1407, 1411 (8th Cir.1990); that is, the IRS must demonstrate that its position was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

*Miller, et al.,* 983 F.2d at 859. The Sixth Circuit, as well, has not specifically applied case law interpreting the EAJA to § 7430, however, the Court appears to follow consistent reasoning. See *Beaty v. United States,* 937 F.2d 288 (6th Cir.1991).[2]

With respect to the EAJA, the Sixth Circuit has cited the language from *Pierce,* quoted above in the Eighth Circuit's opinion, which discusses objective reasonableness. *United States v. Real Property Located at 2323 Charms Road,* 946 F.2d 437, 440 (6th

---

was the real taxpayer involved, as they asserted prior to summary judgment. Thus, in their brief, they overlooked the corporate form of the Foundation which was essential to their obtaining summary judgment. In their reply brief, they "revoke" the statement quoted above, and observe that, in fact, they never were creditors of the Foundation.

The government tries to make some hay out of this error, but the law of the case is that the Foundation's corporate form must be respected. Therefore, although the slip is ironic, it is immaterial.

2. This Court disagrees with the Eighth Circuit's opinion in *Miller* regarding the burden of proving substantial justification. The EAJA's language on the burden of proof is ambiguous, and placing the burden on the Government is appropriate under that statute, as the Eighth Circuit recites. Section 7430's language, however, clearly intends that the party seeking payment of fees must demonstrate that the Government's position was lacking in substantial justification. The statute defines "prevailing party" as one

> (i) which establishes that the position of the United States in the proceeding was not substantially justified.

I.R.C. § 7430(c)(4)(A)(i). As the Court concludes above, the Plaintiffs in this case have clearly satisfied that burden.

Cir.1991). The Court further observed that "objective indicia, such as the stage in which the proceedings were resolved and the legal merits of the government's position may be relevant in assessing a district court's determination of reasonableness." *Id.* at 440 (citations omitted). This does not mean, however, that disposition on summary judgment establishes that the Government's position was substantially unjustified. In the Court's opinion in *Pierce,* Justice Scalia wrote:

> At least where, as here, the dispute centers upon questions of law rather than fact, summary disposition proves only that the district judge was efficient.

*Pierce,* 487 U.S. at 568–69, 108 S.Ct. at 2551–52.

To give an example, the Eighth Circuit's *Miller* case turned on the interpretation of Arkansas state property law. Nevertheless, "the government failed to present any indication that Arkansas law granted Alamo any ownership interest in the proceeds [of the sale], thereby indicating no effort on the government's part to satisfy the requirements of a successful claim." *Miller, et al.,* 983 F.2d at 860. The Court recited the authorities on which the government had relied—all were cases from other jurisdictions, or were legally inapposite—and observed that the government had also failed to conduct the analysis of state law required of it by the Supreme Court decisions in *Acquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960) and *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). The Court concluded that the government's position was without substantial justification.

Applying these standards to this case and its history, the Court finds that the Government's position was not substantially justified. As the Plaintiffs point out, the Government failed to provide any authority for its argument that, *as a matter of law,* it was entitled to benefit from the other courts' findings that the corporations were shams. More important, as in the Eighth Circuit's opinion in *Miller,* the Government's response to the summary judgment motion failed to establish its right to its lien under state law. There is nothing to distinguish the tenuity of the government's position in this case from that of its position in the Eighth Circuit, and the Court concludes that it lacked substantial justification.

### Attorney's Fees and Costs

There are three disputes surrounding the attorney's fees and costs requests. First, the Government argues that the hours billed are excessive, and that the Plaintiffs "over-lawyered" the case. Second, the Government argues that the statutory rate of $75 per hour should be increased not by the national cost of living increase rate, but by a rate tied to the specific locale. Finally, the Government argues that not all of the miscellaneous costs charged are reimburseable.

### Reasonableness of Hours

■ The Plaintiffs seek reimbursement for five lawyers' time, which they break down as follows:

| Lawyer | Hrs Spent | Hrs Billed |
| --- | --- | --- |
| Peter Georgiades | 46.75 | 45.55 |
| Richard Wile | 87.55 | 86.35 |
| Lazar Palnick | 23.25 | 20.90 |
| Winston Evans (local) | 0.80 | 0.80 |
| Philip Jones (local) | 8.90 | 8.90 |
| Total | 167.25 | 162.50 |

The Plaintiffs assert that the hours were reasonable, and that they have trimmed duplicative time from the hours they are billing. The Plaintiffs have submitted contemporaneous time sheets which detail the tasks on which they spent their time.

The Government asserts that the case has been over-lawyered, that the hours charged are "grossly excessive," and that five lawyers were not needed on the case. They point out that the case was closely related to the jeopardy assessment case, and that because it was disposed of on summary judgment, it required no discovery, oral argument, and no procedural motions. The Government claims, without reference to specific instances, that the hours represent "unwarranted, unnecessary, unproductive and duplicative work." Response at 20.

The Plaintiffs specifically responded to these charges. First, they point out that of the five attorneys, two were local counsel (Local Rule 1(h) requires local counsel) who only billed 9.7 hours between the two of them. Surely, the Plaintiffs argue, this is

reasonable and necessary given local counsels' duties. Of the remaining three attorneys, the Plaintiffs argue that the contention that the hours are excessive is refuted by an analysis of the work performed. They break most of the hours down by task as follows:

| Task | Hrs Spent |
|---|---|
| Complaint | 23.65 |
| Research ...............3.00 | |
| Drafting .....'..........12.90 | |
| Exhibits, etc............3.50 | |
| Communication ..........4.25 | |
| Summary judgment | 28.50 |
| Research ...............5.55 | |
| Drafting ..............18.75 | |
| Exhibits, etc............2.20 | |
| Communication ....'......2.00 | |
| Reply to summary judgment opposition | 35.70 |
| Research ...............7.00 | |
| Drafting ..............25.30 | |
| Other ...................3.40 | |
| Response to government's motion to amend | 12.00 |
| Research ...............4.10' | |
| Drafting ...............7.90 | |
| Motion to dismiss appeal | 26.60 |
| Research ...............8.00 | |
| Drafting ..............15.90 | |
| Petition for costs | 8.65 |
| Research ...............2.25 | |
| Drafting ................6.00 | |
| Communication ..........0.40 | |

These hours are reasonable, given the issues in the case, and the quality of the work performed. The Government's argument regarding familiarity with the issues is incorrect. Although the lawyers no doubt were familiar with the facts of the case, the case was resolved on the law, and there were unique legal issues present. That the lawyers were not "churning the file" merely to garner extra fees is demonstrated by the few hours (8.65—basically just one lawyer-day) they charged for the fees petition, which is a document they were familiar with from at least two other cases. Finally, although three lawyers were on the case's merits, the lawyers divided the labor well. The Plaintiffs should not be penalized for the number of lawyers working on the case when the total number of hours spent was reasonable.

*Hourly Rate*

The statute provides that "such fees shall not be in excess of $75 per hour unless

the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate." I.R.C. § 7430(c)(1)(B)(iii). The parties agree that a cost of living adjustment is warranted, but disagree on its computation. The Plaintiffs argue that the Department of Labor's "Consumer Price Index for all Urban Consumers" (the "CPI–U") is appropriate proof. Because the CPI–U was 109.6 in January, 1986 (when the attorney's fees act was passed), and 141.8 in October, 1992, there was a 29.74% increase in the index. After rounding, and applied to the hourly rate, this comes to $97.04 per dollar.[3] The Plaintiffs refer to *Bode v. United States*, 919 F.2d 1044 (5th Cir.1990) as authority for this method. This Court has been unable to locate Sixth Circuit authority on point, but notes that the Eighth Circuit used the same method in *Miller, et al.*, 983 F.2d at 861. The Plaintiffs assert that the normal hourly rate for each of the attorneys on the case exceeds the statutory rate, thereby justifying the use of the statutory rate.

The Government argues that a local, rather than national consumer price index should be used, but fails to provide convincing authority or guidance in using their proposed method. The Government's authority for use of a local price index is a case which predated amendments to the statute, *McGowan v. United States*, 88–1 U.S.T.C. para. 9145, 1987 WL 35802 (W.D.Okla.1987), and another which relied for its increase principally on the lawyer's expertise, *Hershey v. United States*, 89–1 U.S.T.C. para. 9233, 1988 WL 158892 (D.Nev.1988). The Government offers no suggestion what these local rates are (the appropriate local inflation rate may be even higher than the national index), or which locale's rate should be used—Nashville's, or the rate of the city in which the Plaintiffs live, or the city in which the Plaintiff's lawyers live. The Government's argument on this point is wholly unpersuasive, and the Plaintiffs are entitled to reimburse-

---

**3.** The Plaintiffs rounded after determining the percentage increase, and arrived at $97.05. To be most precise, they should have rounded after the final calculation, which results in the rate of $97.04 per hour used above.

ment of 162.50 hours at $97.04 per hour, for a total of $15,769.00.

*Miscellaneous Costs*

 Finally, the government quarrels with some of the Plaintiff's other costs. The Plaintiffs list the following costs:

| Description | Amount |
| --- | --- |
| Complaint filing fee | $120.00 |
| Copy of exhibits | 18.50 |
| Lawyer admission fee | 25.00 |
| Photocopies | 135.60 |
| Postage | 15.94 |
| Federal Express | 18.00 |
| Long distance | 6.25 |
| Total | $339.29 |

The government argues that the only reimburseable expenses are the complaint filing fee and the photocopies, for a total of $255.60. The Plaintiffs argue that the other costs are properly reimburseable, and cites *United States v. Sam Ellis Stores, Inc.,* 768 F.Supp. 286 (S.D.Cal.1991).

The Plaintiffs have the better part of this argument, too, and the Court will award them what they request, with the exception of the bar admission fees. Again, the Eighth Circuit in *Miller* made a similar award, noting that "[c]osts such as these are inevitable in any litigation, and are reasonably considered 'litigation costs,' which may be recovered" under the statute. *Miller, et al.,* 983 F.2d at 862. The same opinion, however, states that bar admission fees, because they go merely toward "the enhancement of an attorney's versatility or capability," should not be awarded. The total after removing the bar fee from the above list is $314.29, and the Plaintiffs are entitled to reimbursement in this amount.

## IV

For the aforementioned reasons, the Court finds that the Plaintiffs are prevailing parties within the meaning of I.R.C. § 7430, and that they have carried their burden of demonstrating that the Government's position in this litigation was not substantially justified.

Therefore, the Court awards them attorney's fees in the amount of $15,769.00, and costs in the amount of $314.29, for a total of $16,083.29.

## ORDER

It has been brought to the Court's attention that, through a clerical oversight, the Plaintiffs' amendment to their Petition for an award of Attorney's Fees and Costs was overlooked. The Plaintiffs request compensation for an additional 16.5 hours of attorney time, spent in defense of their Petition. For the reasons discussed in the Court's Memorandum of April 8, 1993, the Plaintiffs are entitled to the payment of this time, as well, at the rate of $97.04. The Court hereby ORDERS the United States to pay the Millers $1601.16 in addition to the award the Court ordered on April 8, 1993.

It is so ORDERED.