Morris v. Linton.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.

JOHN MORRIS, APPELLEE, V. PHŒBE R. E. E. LINTON ET AL., APPELLANTS.

FILED SEPTEMBER 20, 1905. No. 13,901.

1. **Depositions: ADMISSIBILITY.** In the case of alienation of lands *pendente lite*, depositions of witnesses taken after the alienation and before the alienee becomes a party to the cause may be used against the alienee the same as they might have been used against the party under whom he claims.

2. **Mortgage: VALIDITY.** Where a mortgage is given to secure a *bona fide* indebtedness contracted before the execution of a note, the mortgage will be held valid as security for the debt, although the note itself may be invalid for want of a revenue stamp.

3. **Dismissal: EFFECT.** The dismissal of a bill without prejudice does not conclude the parties thereto.

4. **Trusts: EXECUTED AND EXECUTORY.** The distinction between trusts executed and executory is this: A trust executed is where the party has given complete directions for settling his estate, with perfect limitations; an executory trust is where the directions are incomplete, and are rather minutes or instructions for the settlement.

5. **The law of the situs governs in regard to all rights, interests and titles in and to immovable property.**

APPEAL from and error to the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*John O. Yeiser,* for appellants.

*E. W. Simeral, contra.*

OLDHAM, C.

The original petition in this case was filed on May 24, 1898, in the district court for Douglas county, praying for

the foreclosure of a real estate mortgage executed by the
defendant, Phœbe R. E. E. Linton, to John Morris, mort-
gagee. The mortgage was given to secure advancements
of money made by the mortgagee for the separate use of
Mrs. Linton, and was purported to be evidenced by a note
executed by her to the mortgagee at the time the mortgage
was given. It was a Nebraska form of mortgage, describing
the mortgagor as "Phœbe Rebecca Elizabeth Elwina Lin-
ton of Omaha, Nebraska, United States of America, wife
of Adolphus Frederick Linton." It was acknowledged on
January 14, 1896, in London, England, before the deputy
consul general of the United States of America, under
seal of his office, in the ordinary form of acknowledgment
in this state. It is stipulated, however, that Mrs. Linton
was a subject of Great Britain at the time the note and
mortgage were executed. When the suit was instituted,
all parties appearing to have any claims or interest in the
mortgaged premises were made parties defendant. The
cause of action was continued from time to time, and on
August 28, 1901, upon notice to all the parties defendant,
depositions were taken by the plaintiff in London, Eng-
land, and these depositions were filed in the district court
for Douglas county, September 17, 1901. On May 20,
1901, there had been filed for record with the register
of deeds of Douglas county a purported conveyance
in trust of the lands in controversy from Mrs. Lin-
ton to a trustee for the benefit of her two minor chil-
dren, Charles and Fryda Linton. This is claimed to have
been done in compliance with an antenuptial contract
with her husband. Thereafter, on November 4, 1901,
plaintiff filed an amended and supplemental petition, mak-
ing these minor children and the trustee named in the
purported deed parties defendant. A guardian *ad litem*
was appointed for the minor defendants, and after many
delays the issues were finally settled. On April 9, 1904,
a decree was entered in favor of the mortgagee for the sum
of $44,679.20, and a foreclosure of the mortgaged premises
was directed. To reverse this decree the guardian

*ad litem* of the minor defendants brings error to this court, and defendants Phœbe R. E. E. Linton and her husband bring the cause here by appeal. The two causes of action were consolidated and will be treated together. In the error proceedings by the guardian *ad litem* of the minor defendants it is first urged that the court erred in overruling the motion of the guardian *ad litem* to suppress the depositions taken in London on August 28, 1901, as against the rights of the minor defendants. No motion to suppress these depositions was made until May 2, 1902, and the motion to suppress was not called for action until April 8, 1904, the day the trial began. The court overruled the motion, and the trial proceeded without further objections from the defendants. Without determining whether or not these minors were necessary parties to the suit, it is sufficient to say that they came into the suit *pendente lite* under a conveyance executed long after the suit had been instituted. It is the rule that, where an alienation of property is made *pendente lite,* the alienee is bound by the proceedings in the suit after the alienation and before the alienee becomes a party to it. Depositions of witnesses taken after the alienation and before the alienee becomes a party may be used against the alienee, as they might have been used against the party under whom he claims. 2 Barbour, Chancery Practice (1st ed.) *79; *Lange v. Braynard,* 104 Cal. 156, 37 Pac. 868.

It is next urged that the court erred in admitting in evidence the note executed by Mrs. Linton to the mortgagee, because such note does not appear to be stamped, as required by the revenue laws of England, where the note was executed, and that, consequently, the mortgage which secured the note was void. In the first place, as the trial was to the court and not to a jury, it was not error to admit the note in evidence in the first instance, even if unstamped. The only error that could be predicated would be the action of the trial court in rendering judgment on such improper testimony. The court, after admitting the note, refused to render judgment on it, and only found for

the plaintiff for such sums of money as were shown without dispute to have been furnished Mrs. Linton for the benefit of her separate estate. The note was given for $55,454, but the evidence showed that part of this consideration was a debt of the husband, Adolphus Frederick Linton, and no recovery was allowed for this part of the obligation. It is a well settled proposition that, where the original consideration is valid and is contracted prior to the execution of the note, a mortgage given to secure the debt will be valid, although the note purporting to evidence the debt is invalid for want of a revenue stamp. 1 Jones, Mortgages (3d ed.), 353; *Wilson v. Carey*, 40 Vt. 179; *Brown v. Watts*, 1 Taunt. (Eng.) 353; *Sutton v. Toomer*, 7 B. & C. (Eng.) 416.

The sufficiency of the evidence to sustain the decree is challenged in both the error and the appellate proceedings. The facts underlying the controversy are that in 1878 Phœbe R. E. E. Finley, a prospective American heiress, then a minor of the age of 16 years, whose father resided in the state of Pennsylvania, was married in Paris, France, by the English consul to Adolphus Frederick Linton of London, England, who appears to have been a profligate bankrupt. Before the marriage the following antenuptial agreement was entered into by the intended husband and wife: "This is an agreement made on the 9th day of December, Anno Domini 1878, between Adolphus Frederick Linton, Esq., bachelor, of 18 Gilbert St., Grosvenor Square, Middlesex, on the one part, and Rebecca Elizabeth Phœbe Elwina Finley, on the other part, in pursuance of a marriage which is proposed to take place between said parties. It is agreed that all the moneys and property that the said intended wife may become or is now in possession of or that she may at any future time become entitled to, shall be free from the debts, control and engagements of the said intended husband, and settled upon herself for her sole and separate use, and be divided amongst the children of the said intended marriage in such shares as the said intended hus-

band and wife may appoint, but subject, nevertheless, to the said husband taking a vested life interest in any such money or property as above mentioned, in the event of his surviving the said intended wife. And it is further agreed between the said parties that a formal deed of settlement shall be drawn up embodying, in effect, the said agreement as soon as conveniently possible after said marriage. (Signed.) Phœbe Rebecca Elizabeth Elwina Finley. (Signed.) Adolphus Frederick Linton. Witness: R. Lancaster Johnson." At the time this agreement was entered into, Mrs. Linton was the heir expectant of her maternal grandfather, James E. Brown, a resident of Pennsylvania. In 1880, the grandfather died, leaving a valuable estate, which, in 1890, was conveyed in trust to Colonel John B. Finley, father of Mrs. Linton, for her sole benefit. This estate was held in trust by Colonel Finley until 1894, when, on September 28 of that year, he conveyed the lands now in controversy and other lands to Mrs. Linton. This conveyance was properly filed for record with the register of deeds of Douglas county. About two years later the mortgage in controversy was given. On November 15, 1892, Mrs. Linton brought an action in the English chancery court against her husband and his trustee in bankruptcy for specific performance of the antenuptial agreement above set out. It is fair to say that the suit appears to have been brought with the full knowledge and probably at the suggestion of plaintiff, John Morris. The suit, however, was dismissed without prejudice by the plaintiff, October 30, 1893.

It is now contended by counsel for the appellants and plaintiffs in error that the institution of this suit was a ratification of the antenuptial agreement entered into while Mrs. Linton was a minor. If we should regard the institution of the suit as a ratification of the contract, we would be compelled likewise to regard the dismissal of the cause by her as a revocation. The true rule, however, is that the dismissal of a bill without prejudice does not conclude the parties thereto, and they are at liberty to

bring another bill upon the same subject matter. *House v. Mullen,* 22 Wall. (U. S.) 42; *Bank of Maywood v. Estate of McAllister,* 56 Neb. 188. Hence, the institution and dismissal of this suit amounted to neither a ratification nor a revocation of the contract. From the terms of the above agreement it is plainly an executory rather than an executed contract. It shows on its face that its purpose was to protect the expected inheritance of the wife from the debts and liabilities of the bankrupt husband, because, at the time the contract was entered into, under the laws of England, where the parties intended to reside, the personal property of the wife, when reduced to possession, passed to the husband. Consequently, the husband was to have a life estate in the property if he survived the wife; but all the property to be received by her was settled on herself for her sole and separate use, to be divided among the children of the intended marriage in such shares as the husband and wife might subsequently agree upon; and it was further agreed that a formal deed of settlement should be drawn up to effect this purpose as soon as conveniently possible after the marriage.

The contention of the plaintiffs in error is that the minor defendants take the fee of the land in dispute as purchasers under this antenuptial settlement, and that the mortgage was taken by the mortgagee with full knowledge of their rights under this agreement. "The distinction between trusts executed and executory is this: a trust executed is where the party has given complete directions for settling his estate, with perfect limitations; an executory trust, where the directions are incomplete, and are rather minutes, or instructions for the settlement." *Neves v. Scott,* 9 How. (U. S.) 196, 211; *McCartney v. Ridgway,* 160 Ill. 129. The action anticipated by this agreement for carrying it into effect was the execution of a formal deed for that purpose. This was never made until 1901, or five years after the mortgage had been executed. At the time the agreement was entered into, Mrs. Linton had not yet come into possession of her estate, and

the ancestor from whom she received it was still alive. In this court, in the case of *Kocher v. Cornell*, 59 Neb. 315, after a very careful review of the authorities, we held that a married woman cannot contract with reference to her subsequently acquired property. Now, at the time the contract was made, it is conceded that Mrs. Linton was a minor, and that the contract to be binding upon her must have been affirmed after she arrived at maturity, which was long after she had become a married woman.

But it is contended by counsel for the Lintons that the contract, the mortgage and the note are all governed by the laws of Great Britain, the place where the contract was entered into, and not by the laws of the state of Nebraska, the *situs* of the real estate. It is said authoritatively by the learned Judge Story, in his Conflict of Laws, sec. 428, that the law of the *situs* shall exclusively govern in regard to all rights, interests and titles in and to immovable property. See also *Richardson v. De Giverville*, 107 Mo. 422, 17 S. W. 974. It follows therefore that the execution of the mortgage and the contract under which the minors claim title to the real estate must be determined by the laws of this state, and not by the laws of England. As already set forth in the opinion, the mortgage itself was a Nebraska form, and was executed in conformity with our statutes. But even if the acknowledgment had been informal as between the parties, the mortgage would have been good, as held by this court in *Linton v. Cooper*, 53 Neb. 400, and in *Morris v. Linton*, 61 Neb. 537.

We therefore conclude that the antenuptial agreement relied upon is no sufficient defense against plaintiff's mortgage, and recommend that the judgment of the district court be affirmed.

AMES and LETTON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.