975 F.2d 547
 92-2 USTC P 50,524, 23 Fed.R.Serv.3d 1128
 Robert A. MILLER; Kody Miller, By Robert A. Miller; Robert
Miller, By Robert A. Miller, Carey Miller;
Jeremiah Justin Miller, By Carey Miller;
Rick Miller; James Miller,
Plaintiffs-Appellees,
v.
Tony ALAMO, a/k/a Tony Fernando, a/k/a Tony Fernando Alamo,
a/k/a Bernie Lazar, a/k/a Bernie Hoffman, a/k/a Bernie Lazar
Hoffman, a/k/a Boris Lazar, a/k/a Papa Tony, individually
and as officer and director of Tony & Susan Alamo Foundation
& Music Square Church, Defendant-Appellee,
Timothy J. Leathers, Commissioner of Revenues, Arkansas
Department of Finance and Administration, Intervenor,
United States of America, Intervenor-Appellant.
 No. 91-3116.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 10, 1992.
Decided Sept. 21, 1992.
 
 Jonathan S. Cohen, Washington, D.C., argued (Shirley D. Peterson, Gary R. Allen and Janet Kay Jones, on brief), for appellant.
 Richard Wile, Pittsburgh, Pa., argued (Peter N. Georgiades, Lazar Palnick and Norman Wilkinson, on brief), for appellee.
 Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 The government appeals the district court's[1] determination that the Millers were entitled to the proceeds realized from a series of judicial sales. We affirm.
 
 I. BACKGROUND
 
 2
 The Millers obtained a default judgment against Tony Alamo for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 206(a)(1) and 207(a)(1) and for various claims arising under state law. See Miller v. Tony & Susan Alamo Found., 748 F.Supp. 695 (W.D.Ark.1990). Following further proceedings in this case, the district court found that Alamo and various corporations, including the Tony & Susan Alamo Foundation ("the Foundation") and Music Square Church, Inc. ("Music Square") had no existence separate and apart from each other, and therefore held they were alter egos. The Foundation and Music Square appealed the judgment, and we affirmed the district court. See Miller v. Tony & Susan Alamo Found., 924 F.2d 143 (8th Cir.1991).
 
 
 3
 On April 30, 1990, the Millers recorded their judgment with the Crawford County, Arkansas, Circuit Clerk. After discovering the Foundation and Music Square had transferred their Arkansas property to Twentieth Century Holiness Tabernacle, Inc. ("Twentieth Century"), the Millers filed suit in the Crawford County Chancery Court, alleging that the conveyances were fraudulent and that Twentieth Century was yet another of Alamo's alter egos. The Chancery Court granted the Millers relief on both theories in February 1991.
 
 
 4
 On June 11, 1990, the Internal Revenue Service filed notices of federal tax liens with the Crawford County Circuit Clerk against the Foundation, Music Square, and Twentieth Century. All but one of these assessments were "jeopardy assessments" under 26 U.S.C. § 6861 (1988); the other assessment was made against the Foundation for unpaid employment taxes. In November 1991, the jeopardy assessments were abated by the United States District Court for the Middle District of Tennessee. See 26 U.S.C. § 7429(b)(3) (1988).[2]
 
 
 5
 In February 1991, pursuant to a writ of execution issued the prior month, the United States Marshall seized real and personal property owned by Alamo and his corporate alter egos. The personal property consisted primarily of fancy denim jackets that Alamo and his corporations sold for profit. The personal property, which was sold in a series of sales held during the first part of April, produced (after administrative expenses) approximately $340,000.
 
 
 6
 A group of litigants (referred to as the "Mick Intervenors") claimed the right to intervene in the proceedings as beneficiaries of a judgment obtained by the Secretary of Labor against the Foundation. Additionally, the IRS and the Arkansas Department of Finance and Administration (DFA) sought to intervene. All motions to intervene were eventually granted. Meanwhile, the Marshall, based on the claims of the intervenors and other non-intervening creditors, refused to disburse the sales' proceeds absent a court order. The Millers moved for an order directing that they be paid the proceeds, and the district court granted the motion. In so doing, the district court expressly refused to determine the validity or priority of any of the intervenors' liens, holding that
 
 
 7
 to the extent any of these recent claimants had liens attaching to any of the property sold at the execution sales which were superior to those of the plaintiffs in this case, those liens are still attached to the property. It is only if the claimants' liens were inferior to those of the plaintiffs that they would have been extinguished. In either event, the liens of the various competing parties do not attach to the proceeds now in the hands of the U.S. Marshal, and those proceeds should be paid to the executing judgment creditors.
 
 
 8
 Miller v. Alamo, No. 88-2206, slip op. at 3 (W.D.Ark. June 7, 1991) (order granting disbursement of proceeds). The government appeals the order.
 
 II. DISCUSSION
 A. Jurisdiction
 
 9
 The Millers contend the district court's June 7 order is not final and we therefore lack jurisdiction over this appeal. The lack of finality is predicated on what the Millers believe are some still-lingering issues: the validity and priority of the various liens, the IRS' request for a ruling that it is entitled to any proceeds that exceed the Millers' judgment, the validity of a garnishment filed by the Millers against the IRS, and Alamo's continuing attempts to have the underlying judgment set aside.
 
 
 10
 Our jurisdiction extends only over final judgments, see 28 U.S.C. § 1291 (1988); however, the concept of finality is elusive and is often difficult to ascertain. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 170 & n. 9, 94 S.Ct. 2140, 2149 & n. 9, 40 L.Ed.2d 732 (1974). Finality is to be determined by applying practical, not technical, considerations, which requires an appellate court to consider "the competing considerations underlying all questions of finality--'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.' " Id. at 171, 94 S.Ct. at 2149 (quoting Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950) (footnote omitted)). However, the concern about limiting piecemeal appeals is diminished when the appeal involves post-judgment orders. United States v. Washington, 761 F.2d 1404, 1406 (9th Cir.1985), cert. denied, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); Joseph & Hughes Co. v. United Plumbing & Heating, Inc., 390 F.2d 629, 630 (6th Cir.1968). One reason is that the underlying dispute has already been settled, and there is little danger that prompt appeal of post-judgment matters will cause confusion, duplicative effort, or otherwise interfere with the trial court's disposition of the underlying merits. See King v. Ionization Intern., Inc., 825 F.2d 1180, 1184 (7th Cir.1987). Another reason for downplaying the courts' traditional concern over piecemeal appeals is that further proceedings are not likely to produce an order that is any more final than the one at issue. See Washington, 761 F.2d at 1406. This case presents a prime example of the latter point. The issue presented to the district court was, simply, who should get the proceeds from the sale of the assets? The district court answered this question when it decided the Millers were entitled to the money. This mini-dispute is over insofar as the district court is concerned; nothing the court could do in the future will make its decision any more final. Though it is true the court did not decide the validity or priority of the various claimants' liens, it declined to do so because such a determination was unnecessary to decide the issue then before the court. The validity of the Millers' garnishment against the IRS has no bearing on the fund of money at issue in this case, and the IRS' request for a ruling that it is entitled to any proceeds in excess of the Millers' claim is irrelevant in that it appears there is no excess.
 
 
 11
 Alamo's continuing efforts to undo the effects of the underlying judgment requires further discussion. Alamo filed a motion seeking relief from the Millers' judgment pursuant to Fed.R.Civ.Pro. 60(b). This motion was denied by the district court and Alamo has appealed that denial.[3] The Millers contend the underlying merits are theoretically still in jeopardy of reversal and therefore the issues raised by the government are not ripe for appellate review. The flaw in the Millers' argument is that Alamo's Rule 60(b) appeal is not coupled with a direct appeal; indeed, the underlying judgment was rendered in 1990, and the time for filing a direct appeal has long since passed. A Rule 60(b) motion "does not affect the finality of a judgment or suspend its operation," Fed.R.Civ.Pro. 60(b), so "an appeal from the denial of a motion made under Rule 60(b) does not raise the underlying judgment for review; it presents the appellate court only with the question of whether the trial court abused its discretion in ruling on the motion." Sanders v. Clemco Indus., 862 F.2d 161, 169 (8th Cir.1988). Thus, as a procedural matter, Alamo's current efforts do not touch upon the merits of this case.
 
 
 12
 We are also concerned about the practical implications of the Millers' argument. The Millers' argument rests upon one of two premises: either 1) the present existence of a Rule 60(b) motion prevents finality, or 2) the existence of an avenue through which a judgment's merits may be reexamined prevents finality. Both premises are unacceptable. A Rule 60(b) motion may be filed for any one of six listed reasons,[4] and must be filed within a reasonable time. The rule prescribes that a motion based upon the first three grounds must also be filed within one year of the judgment; however, there is no outer time limit on the latter three grounds. "What constitutes a 'reasonable time' depends largely on the facts of each case under consideration. See In re Emergency Beacon Corp., 666 F.2d 754, 760 (2d Cir.1981) (twenty-six month delay not unreasonable)." Harris v. Union Elec. Co., 846 F.2d 482, 484 (8th Cir.1988). Thus, a losing party could always file a Rule 60(b) motion, regardless of how much time has passed since the court entered judgment. To be sure, as time passes the likelihood diminishes that the motion will be found to have been filed within a reasonable time; however, the district court would still be required to determine the reasonableness of the delay. If the Millers' argument is correct, the government can never appeal this order because Alamo will always have the ability to file a Rule 60(b) motion, have it granted (at least in theory), be relieved of the judgment, and thereby remove the judgment upon which the instant order depends. Clearly, this is not the law.
 
 
 13
 On the other hand, we cannot accept the premise that the presence of Alamo's current Rule 60(b) motion in the judicial process thwarts finality. This premise leads to the conclusion that a judgment's finality could appear and disappear as each Rule 60(b) motion is denied and a new one is filed. Finality is not a transient concept, and this view would remove all meaning from Rule 60(b)'s specific admonishment that a motion will not affect finality.
 
 B. Mootness
 
 14
 The Millers contend the government's appeal is moot because the jeopardy assessments were set aside, thereby extinguishing the IRS' lien.[5] The Millers concede the assessment for employment taxes was not a jeopardy assessment and therefore the lien for those taxes was unaffected by the setting aside of the jeopardy assessments; however, the Millers contend the assessment was made on the Foundation, and the property seized and sold pursuant to the instant execution had been conveyed by the Foundation to Music Square long before the IRS made the assessment. The government contends it has a lien against the Foundation, and there have been judicial determinations--in this case and in other cases--that the Foundation, Music Square, and Alamo are all alter egos. We agree that the district court's decision to that effect in this case prevents the government's appeal from being moot.
 
 
 15
 In holding the corporations and Alamo were alter egos of each other, the district court specifically found the corporations had no existence apart from Alamo, and that Alamo and the corporations were really the same entities. This ruling became the law of the case and should be applied, absent special circumstances not present here, throughout all subsequent proceedings in this case. Little Earth of United Tribes, Inc. v. United States Dep't of Housing & Urban Dev., 807 F.2d 1433, 1441 (8th Cir.1986). As an intervenor in this case, the government is bound by all prior judicial decisions, Galbreath v. Metropolitan Trust Co. of Cal., 134 F.2d 569, 570 (10th Cir.1943); Yankton Sioux Tribe of Indians v. Nelson, 604 F.Supp. 1146, 1151 (D.S.D.1985), rev'd on other grounds, 796 F.2d 241 (8th Cir.1986), and there is no principled justification for binding intervenors to unfavorable prior decisions while at the same time denying intervenors the benefits of favorable prior decisions. We also believe it would be anomalous to hold that, with respect to some parties, the defendant-entities are alter-egos, yet with respect to other parties, they are not. The combination of the government's lien on the Foundation's property and the court's prior ruling that the Foundation and Music Square (and Alamo) are the same entities means the government has, for purposes of this case, a lien on the clothing that was sold at the Marshall's sales.
 
 C. Disposition of the Proceeds
 
 16
 The government argues its lien on the clothing is superior to the Millers'. The Millers do not dispute this contention; therefore, we will assume the government's claim to be true. We begin sorting out the competing claims by first noting the government's tax lien attaches to all real and personal property owned by Alamo, even if the property was acquired after the lien's creation. 26 U.S.C. § 6321 (1988); Glass City Bank v. United States, 326 U.S. 265, 267, 268, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945). However, in deciding whether the proceeds from these sales can be characterized as Alamo's property (thereby allowing the tax lien to attach), we must refer to Arkansas law. Aquilino v. United States, 363 U.S. 509, 512-13, 80 S.Ct. 1277, 1279-80, 4 L.Ed.2d 1365 (1960).
 
 
 17
 Though our examination of Arkansas law has uncovered little that directly addresses this issue, we note there is absolutely nothing in Arkansas' jurisprudence supporting the government's position that the sales' proceeds could be considered Alamo's property. On the other hand, we have found some indications that Alamo had no rights with respect to the proceeds. First, funds obtained by a sheriff pursuant to a sale are to be turned over to the creditor; the sheriff's failure to pay the creditor gives rise to a cause of action against the sheriff. Fort Smith Seed Co. v. Jones, 198 Ark. 1012, 132 S.W.2d 364, 365 (1939); see also Ark.Stat.Ann. § 16-66-118(c) & (d) (1987). The debtor receives funds only if there is money left after paying the judgment and costs of the sale. Id. § 16-66-413(b)(2); see also id. § 16-66-114(h) (corporate debtors). Arkansas law would recognize Alamo's entitlement to any money in excess of the Millers' judgment and certain administrative costs, and the government's lien would attach to that amount. Cf. Byers v. Sheets, 643 F.Supp. 695, 697 (W.D.Mo.1986) (holding that under Missouri law, debtor has sufficient rights with respect to surplus to allow federal tax lien to attach). However, there was no excess in this case; therefore Alamo would not be entitled to any portion of the money and there is no property belonging to Alamo to which the tax lien may attach.
 
 
 18
 Our conclusion in this regard is buttressed by the contrast between two Supreme Court opinions. In United States v. National Bank of Commerce, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985), the Court, in a 5-4 decision, held that a tax lien attached to all the money contained in a joint bank account even though the tax lien applied to only one of the three owners because the delinquent taxpayer had the right to withdraw the full amount contained in the account without notice to or permission from his codepositor. Id. at 723-24, 105 S.Ct. at 2925-26. In United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958), the Court held that a tax lien did not attach to the proceeds of a life insurance policy insuring the life of the taxpayer (but did attach to the cash surrender value). In so holding, the Court relied on the fact that the insured/taxpayer could not receive the proceeds himself, even though he possessed the right to direct to whom the proceeds would be paid. Id. at 55-56, 78 S.Ct. at 1057-58. We believe the funds at issue in this case are more akin to those at issue in Bess; Alamo had no right to the funds, could not direct where they were paid, and could not expect to receive any part of the money. Arkansas law gives Alamo absolutely no rights with respect to these proceeds; consequently, federal law does not permit a lien to be placed on them.
 
 
 19
 The government is correct when it contends state law cannot curtail a lien. However, this doctrine merely means that once it has been determined state law would grant the debtor/taxpayer property rights, the tax lien attaches--even if state law would not allow other liens to attach. Thus, the cash surrender value of a life insurance policy is property to which a tax lien may attach, even if state law would exempt that property. Bess, 357 U.S. at 56-57, 78 S.Ct. at 1057-58. Similarly, the tax lien may attach to the funds in a joint account, even if state law may not allow other creditors to garnish those funds. National Bank of Commerce, 472 U.S. at 727, 105 S.Ct. at 2928. However, this rule of law applies only after it has been determined that the debtor has property; once it has been determined the debtor has property, state law cannot be used as a shield against the government's tax lien. We have not reached this point in the analysis because Arkansas law extends no rights or expectations to Alamo with respect to this money.
 
 
 20
 The government is not left without recourse. Given that the government's lien on the personal property is senior to the Millers', the government's lien survived the sales. 26 U.S.C. § 7425(a) (1988); Ark.Stat.Ann. § 16-66-203(a) (1987). The government recognizes its lien survives the sales, but contends it is still entitled to recover from the proceeds because it would be impractical to track down all the buyers and assert its superior lien position against each and every jacket purchaser. We cannot say whether or not it is practical or wise for the government to enforce its lien position; we need not do so because there is no doctrine of "virtual destruction" of a senior lien anywhere in the federal or state law. Federal statutes do not grant the government any rights to the proceeds realized from the sales of the jackets, and we cannot manufacture rights simply because the nature of the personal property in this case makes it difficult or impractical for the government to pursue the rights it does possess, or even because it would make the government's task easier.
 
 III. CONCLUSION
 
 21
 Arkansas law does not bestow any rights with respect to the proceeds upon Alamo. Consequently, the proceeds are not Alamo's property and the government's tax lien cannot attach. We affirm the district court.[6]
 
 
 
 [1]
 The Honorable Morris S. Arnold, then a United States District Judge for the Western District of Arkansas and currently a member of this court
 
 
 [2]
 The district court's decision setting aside the abatements is not reported. However, the court delivered its findings orally, at which time it stated that the abatements were unreasonable because the government made them solely to manufacture a lien position superior to the Millers
 
 
 [3]
 Alamo's appeal of the denial of his Rule 60(b) motion is pending in this court, and has not yet been assigned to a panel. We make clear that nothing contained in this opinion is intended to resolve any of the issues in that appeal, and this opinion should not bind the panel to which that appeal is ultimately assigned
 
 
 [4]
 The six grounds for a Rule 60(b) motion are:
 (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ... misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.
 Fed.R.Civ.Pro. 60(b).
 
 
 [5]
 This was not an issue in the district court because the jeopardy assessments were set aside after the court ruled on the disposition of the funds
 
 
 [6]
 Because of the nature of our decision, we need not address the district court's alternative holding that the money was protected by 26 U.S.C. § 6323(b)(8) (1988), which renders the tax lien invalid insofar as the property is subject to a lien for an attorney's services