FIRST NATIONAL BANK IN MITCHELL, APPELLEE, V. TED DAGGETT ET AL., APPELLANTS.

497 N.W.2d 358

Filed March 12, 1993.   No. S-90-418.

Robert M. Harris and Randall L. Lippstreu, of Harris & Lippstreu, for appellants.

Benjamin P. King, of Reed-King Law Office, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

Defendants-appellants, Daggetts and Klor (defendants), appeal a judgment from the district court for Scotts Bluff County in favor of plaintiff-appellee, First National Bank of Mitchell (FNB). FNB brought suit against the defendants seeking to satisfy a judgment against Ted Daggett's interest in real property that he and his wife, Mona, had conveyed to a trust. The district court (1) held that Ted Daggett's transfers to the trust and his later transfers of his beneficiary interest therein were fraudulent to FNB; (2) declared the trust void; (3) set aside

the transfers to the trust and determined that Ted and Mona each held an undivided one-half interest in the title to the real estate; and (4) held that Ted's interest in the property was subject to execution by FNB. We affirm.

The controversy in this case centers around the transfer of real estate, via two deeds, from Ted Daggett (Daggett) and his wife to the "T-M Enterprises Trust" (trust) on October 12, 1982. The relevant facts surrounding these transfers and the subsequent lawsuit are as follows.

At the time of the transfers to the trust, Daggett owed FNB over $271,000. Following the transfers, Daggett failed to repay his debt to FNB. On September 4, 1984, FNB recovered a judgment against Daggett for $378,178.66. Despite its judgment, FNB's attempts at execution in 1985 and 1988 recovered only $21,487.94. To aid its recovery FNB filed an action in April of 1985 seeking to set aside the transfers to the trust. FNB later dismissed that action without prejudice.

On October 5, 1988, FNB filed the present action, again seeking to satisfy its judgment against the realty Daggett had transferred to the trust. In its amended petition FNB listed three causes of action. FNB first asserted that due to various infirmities of the T-M Trust instrument, the trust was void. FNB's final two causes of action asserted that the transfers were fraudulent to FNB.

FNB asked the district court to declare the trust void, to declare Daggett's transfers to the trust and his sons fraudulent, and to set aside those transfers. FNB further requested that the court determine and partition Daggett's interest in the property so that FNB could satisfy its judgment against that interest. The defendants' answers alleged that FNB's action was barred by the statute of limitations and did not state a cause of action.

The district court found, among other things, that the trust was void and that Daggett's transfers to the trust and to his sons were fraudulent. The court ordered that the transfers be set aside, determined that Daggett and his wife each held title to an undivided one-half interest in the real estate, and declared that Daggett's one-half interest was subject to execution to satisfy FNB's judgment. The court subsequently denied the defendants' motion for a new trial.

The defendants argue that the district court erred by (1) overruling their objection that FNB's petition failed to state a cause of action; (2) failing to find the action barred by the statute of limitations; and (3) overruling the defendants' motion for a new trial.

FNB's action against Daggett is a creditor's bill by which FNB seeks to subject property, allegedly owned by Daggett, to payment of a judgment. We have noted that there are two types of creditor's bills, both of which sound in equity. See *Thies v. Thies*, 111 Neb. 805, 198 N.W. 151 (1924). We therefore apply the following standard of review:

> In an appeal of an equity action, this court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, we consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

*State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 657, 477 N.W.2d 577, 581 (1991) (quoting *State ex rel. Spire v. Strawberries, Inc.*, 239 Neb. 1, 4, 473 N.W.2d 428, 432 (1991)).

Furthermore, when reviewing questions of law we are obliged to reach conclusions independent of the trial court's rulings. *Dowd v. First Omaha Securities Corp., ante* p. 347, 495 N.W.2d 36 (1993).

Regarding creditors' suits, we stated in *Thies, supra*:

> There are two classes of creditors' bills, one to reach the equitable assets or property of the debtor on which an execution at law cannot be levied; the other in aid of an execution at law, as to set aside an incumbrance or a transfer of property made to defraud creditors.

*Id*. at 809, 198 N.W. at 152 (quoting *State Bank of Ceresco v. Belk*, 68 Neb. 517, 94 N.W. 617 (1903)).

FNB's amended petition included both types of creditor actions. FNB's first action alleged that the trust was void, that Daggett had retained an interest in the deeded real estate, and sought to satisfy its judgment against that interest. FNB's second and third actions sought to set aside the deeds based on fraud. Because we find that FNB's first cause of action is

dispositive, we address only the type of creditors' bill attacking the trust's validity, which we will refer to as an "equitable assets" creditor's bill.

There are three requirements for an equitable-assets creditor's bill. First, the creditor must have a judgment against the debtor; second, the creditor must "allege and show that he has exhausted his remedy at law," i.e., the creditor must show that execution has not satisfied the judgment; and finally, the debtor must have some interest in property that the creditor is unable to reach through execution. See *Thies, supra*, at 809, 198 N.W. at 152.

The first two requirements of *Thies* are disposed of easily. FNB gained a judgment against Daggett in 1984. In addition, FNB's attempts at satisfying the judgment through legal action proved unsuccessful; executions in both 1985 and 1988 recovered only $21,487.94 of the $378,178.66 judgment. Our inquiry thus focuses on whether Daggett possesses an interest in property which execution cannot reach.

FNB argues, and the district court agreed, that the T-M Enterprises Trust was void for several reasons, including failure to adequately identify its beneficiaries. FNB concludes that because the trust was void, Daggett retained equitable ownership of the deeded real estate and his interest therein is subject to FNB's 1984 judgment.

We first must determine which law governs the validity of the trust. A section of the trust provides that the law of various named jurisdictions shall be applied "[w]here the . . . validity . . . of the trust must be viewed by a court of law . . . ." Thirty-four trust provisions are then listed, along with the designated jurisdictions—23 different states and England. Included in the list is the language, "Identity of beneficiaries — Georgia law."

In *Morris v. Linton*, 74 Neb. 411, 104 N.W. 927 (1905), we stated that "the law of the *situs* shall exclusively govern in regard to all rights, interests and titles in and to immovable property." *Id.* at 417, 104 N.W. 929. The same rule, although more particularized, is stated in the Restatement (First) of Conflict of Laws § 241 (1934): "The validity of a trust of an interest in land is determined by the law of the state where the land is." *Id.*

Unless contrary to public policy, choice-of-law provisions are usually enforced. *Lauritzen v. Larsen*, 345 U.S. 571, 588-89, 73 S. Ct. 921, 97 L. Ed. 1254 (1953). We hold that in this situation, however, Nebraska law governs. The trust was created and executed in Nebraska and, most importantly, the *real estate* held in trust is located in Nebraska. The record indicates that Georgia has absolutely no contacts with the trust, the parties, or the real estate. In fact, Daggett stated that he only included the choice-of-law list because he had been instructed to do so in a trusts class. Daggett also admitted that he had not read any of the state laws included in the list.

At issue is the validity of a Nebraska trust—the receptacle of Nebraska real estate. Were we to resort to the laws of unconnected, outside jurisdictions to determine the ownership of Nebraska land, the certainty of title, marketability, and transferability of land in this State would be adversely impacted. Policy requires the law of the situs to govern. Nebraska law will determine the validity of the T-M Enterprises Trust. See *Morris, supra*. See, also, *Cook v. Frazier*, 765 S.W.2d 546 (Tex. Ct. App. 1989).

The relevant portions of the original trust document provide:

### BENEFICIARIES

The beneficiaries of this trust are those persons holding certificates representing units of beneficial interest, whose names are recorded and ascertainable in the trust records.

. . . .

### RECORDING THE NAMES OF BENEFICIARIES

The names of each beneficiary of this trust must be recorded by the trust recordkeeper in the trust records . . . . An up-to-date list of these beneficiaries may be certified by the trustees . . . . [T]hat list is intended to represent a clear and definite means for the ascertainment of the beneficiaries of this trust.

In *First Nat. Bank v. Schroeder*, 222 Neb. 330, 383 N.W.2d 755 (1986), we held invalid a trust that failed to adequately identify its beneficiaries. The trust at issue in *Schroeder* provided that the lawful possessor of the trust's "units of beneficial interest" would be the lawful owner of the interests. *Id*. at 332, 383 N.W.2d at 757. We declared the trust invalid,

stating:

> The trust document *contains no provision indicating who is to receive the certificates of beneficial interest, nor does it empower the trustees to make that determination.*
>
> [The Settlor] argues that [under the trust provisions] . . . the beneficiaries were at all times ascertainable.
>
> [The Settlor] misses the point that "[i]t is essential to the creation and existence of a trust that a . . . beneficiary . . . *be designated* with sufficient clarity and certainty to be capable of identification, although not necessarily by name. . . ." (Emphasis supplied.) [Citation omitted.] The trust simply designates the owner as the beneficiary *without providing how possession and ownership shall occur.* Resultingly, the trust, on its face, does not adequately identify its beneficiaries and therefore must fail.

*Id.* (Emphasis supplied.)

The T-M Enterprises Trust similarly fails, on its face, to adequately designate its beneficiaries. The trust, like the trust in *Schroeder, supra*, merely provides a method of ascertaining who owns the certificates of beneficial interest. However, nothing *in the trust instrument itself* indicates how possession and ownership shall occur. The trust provisions do not indicate who is to receive the certificates, nor do they give the trustees the power to make that determination. As was the case in *Schroeder*, the trust must fail.

FNB also attacked the validity of the trust on other grounds, including failure to adequately identify its corpus and creating a spendthrift trust for the benefit of the settlor. Because failure to adequately identify beneficiaries is sufficient ground to invalidate the trust, we do not address FNB's other allegations.

Having determined that no trust existed to which Ted and Mona Daggett could transfer their realty, we next must consider the effect of the two deeds. In *Schroeder, supra*, we were faced with a factual scenario strikingly similar to the one now before us. After the debtor in *Schroeder* had transferred most of his assets to a trust, the bank obtained a judgment against him. Its attempts at execution having failed, the bank successfully attacked the validity of the trust in district court. *Schroeder*,

222 Neb. at 331, 383 N.W.2d at 756-57. On appeal, we agreed that the trust was invalid and affirmed the district court decree which declared that "[the trust's] assets are held by the Trustees in Constructive Trust for [the debtor]." *Id.* at 332-33, 383 N.W.2d at 757-58.

Although our analysis in *Schroeder* was correct, we note that a resulting trust, rather than a constructive trust, is created when an inter vivos express trust fails and the settlor has not indicated how the property should be distributed upon such failure. See, *In re Estate of Mooney*, 131 Neb. 52, 267 N.W. 196 (1936) (citing Restatement of Trusts § 411); *Holbein v. Holbein*, 149 Neb. 281, 30 N.W.2d 899 (1948); V William F. Fratcher, Scott on Trusts §§ 404.2, 411 (4th ed. 1989). The difference in name, however, does not change the result. As was the case in *Schroeder, supra*, the trustees of the T-M Enterprises Trust held the deeded real estate in trust for the settlors, Ted and Mona Daggett.

Despite conveying his legal title to the real estate to the trustees, as a beneficiary of the resulting trust Daggett remains the equitable owner of the property. See, *Holbein, supra*; Scott on Trusts, *supra*, at §§ 404.2, 462.1. As such, Daggett possessed an interest in the real estate that could be used to satisfy FNB's judgment. The requirements of *Thies* are therefore satisfied and FNB may satisfy its judgment through equitable proceedings. See *Thies, supra*. Neb. Rev. Stat. § 25-1564 (Reissue 1989) provides, in pertinent part:

> Where a judgment debtor has not personal or real property subject to levy on execution, sufficient to satisfy the judgment, . . . any interest he may have *in any . . . claims or choses in action*, due or to become due to him . . . shall be subject to the payment of such judgment *by proceedings in equity . . . .*

*Id*. (Emphasis supplied.)

The record indicates that at some point after June 20, 1988, the T-M Enterprises Trust was amended to cure the invalid beneficiary provisions. However, there is no indication of when the amendment occurred. FNB established a prima facie case for its equitable-assets creditor's action by proving that (1) it had obtained a judgment against Daggett; (2) it had exhausted

its remedies at law; and (3) due to an infirmity in the trust, Daggett had retained an equitable interest in the realty until at least June 20, 1988. See *Thies, supra.* Having established these requirements, the burden was on the defendants to show that the trust had been successfully cured prior to the filing of this action. *State ex rel. Beck v. Associates Discount Corp.*, 168 Neb. 298, 308, 96 N.W.2d 55, 65, *modified* 168 Neb. 803, 97 N.W.2d 583 (1959), *overruled on other grounds Dailey v. A.C. Nelsen Co.*, 178 Neb. 881, 136 N.W.2d 186 (1965) (stating: "The burden of evidence at any particular time rests on the party who would be defeated if no further evidence would be introduced.").

The defendants have not shown that the trust was amended prior to the initiation of this suit. Because the defendants have failed to rebut FNB's prima facie case, we treat the trust as invalid at the time this suit was filed. At that time the trust held only bare legal title to the property. As a result, regardless of the curative effect of the subsequent amendment, the trust and Daggett's sons took Daggett's equitable interest in the real estate subject to FNB's judgment. See *Nowka v. Nowka*, 157 Neb. 57, 66, 58 N.W.2d 600, 605, (1953) (holding: "[T]he beginning of a creditor's action to subject an equitable estate to the payment of a judgment gives a specific lien upon the property which it is sought to reach and this lien continues while the cause is pending."). FNB may reach Daggett's interest in the real estate to satisfy its judgment. See Neb. Rev. Stat. §§ 25-1503, 25-1564 (Reissue 1989).

We next address the defendants' argument concerning the statute of limitations. The defendants argue that FNB's causes of action are barred by the statute of limitations and that, as a result, FNB's petition failed to state a cause of action. They further allege that the applicable statute of limitations in an action to set aside a conveyance as fraudulent is four years, pursuant to Neb. Rev. Stat. § 25-207 (Reissue 1989). We agree with the defendants' interpretation of the law; if FNB had brought suit based solely on allegations of fraudulent conveyances, § 25-207 would apply.

However, as we have already discussed, FNB asserted another ground for making the real estate subject to its

judgment—the invalidity of the trust itself. This non-fraud ground falls outside the ambit of § 25-207. However, a judgment is a prerequisite for bringing a creditors' action, *Thies, supra*, and the equitable-assets action, not specifically governed by any other limitations period, is therefore governed by Neb. Rev. Stat. § 25-1515 (Reissue 1989). Section 25-1515 provides, in pertinent part:

> If execution shall not be sued out within five years from the date of any judgment that now is or may hereafter be rendered in any court of record in this state, or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment . . . shall become dormant . . . .

*Id.*

FNB clearly complied with § 25-1515. FNB received its original judgment in 1984 from the district court for Scotts Bluff County. In 1985 and 1988, FNB issued execution, collecting roughly $21,500. The present action was filed on October 5, 1988. FNB has allowed no five-year lapses between executions and has not allowed the judgment to become dormant. FNB's action is not barred.

Because we have determined that the invalidity of the trust is dispositive on the issue of FNB's ability to reach the real estate, we do not address FNB's contentions that Daggett's transfers to the trust were fraudulent. We thus turn to the defendants' final assignment of error, that the district court erred in denying their motion for a new trial.

"A motion for new trial should be granted only where there is error prejudicial to the rights of the unsuccessful party." *Kumar v. Douglas County*, 234 Neb. 511, 516, 452 N.W.2d 21, 24 (1990). "The District Court has the power and is required to consider and determine motions for a new trial by the exercise of its sound judicial discretion." *Carnes v. Weesner*, 229 Neb. 641, 650, 428 N.W.2d 493, 499 (1988) (quoting *Alliance Tractor & Implement Co. v. Lukens Tool & Die Co.*, 199 Neb. 489, 491, 260 N.W.2d 193, 195 (1977)). The district court's denial of a motion for new trial will be affirmed when the court's decision is neither prejudicial nor an abuse of discretion. *Schuster v.*

*Baumfalk*, 229 Neb. 785, 429 N.W.2d 339 (1988).

Although we have not addressed each cause of action addressed by the district court, we agree with the court on the dispositive issue—FNB's ability, as a result of the invalid trust, to reach Daggett's interest in the land. The district court correctly held that the trust was void and Daggett's interest in the realty could be reached to satisfy FNB's judgment. The court's ruling was not, as the defendants argue, contrary to the evidence or the law. The record indicates no abuse of discretion in the court's denial of the motion for new trial. We therefore affirm the district court's ruling on the motion.

The district court correctly ruled that the trust was invalid. As such, Daggett retained an equitable interest in the deeded realty which FNB may reach to satisfy its judgment. We therefore affirm the district court on those grounds necessary to dispose of this case.

AFFIRMED.