Concepcion GIOVE, Plaintiff–Appellee,

v.

Jeanne A. STANKO, Defendant–Appellant,

Sheridan Enterprises Trust; Western Enterprises Trust; Cara Stanko, Trust; Chris Stanko, Trust; Michael Stanko, Trust; Elizabeth Stanko, Trust; School of Gymnastics, Inc., a defunct Nebraska corporation; River Enterprises Trust; Red Barn Trust; Scotty Trust; Stanko Family Trust; Stanko Family, Inc.; Ted Daggett; Robert Spurgeon; Bruce Scott, Defendants.

Concepcion GIOVE, Plaintiff–Appellee,

v.

Jeanne A. STANKO; Sheridan Enterprises Trust; Western Enterprises Trust; Cara Stanko, Trust; Chris Stanko, Trust; Michael Stanko, Trust; Elizabeth Stanko, Trust; Defendants,

School of Gymnastics, Inc., a defunct Nebraska corporation; Defendant–Appellant,

River Enterprises Trust; Red Barn Trust; Scotty Trust; Stanko Family Trust; Stanko Family, Inc.; Ted Daggett; Robert Spurgeon; Bruce Scott, Defendants.

Concepcion GIOVE, Plaintiff–Appellant,

v.

Jean A. STANKO, Defendant–Appellee,

Sheridan Enterprises Trust; Western Enterprises Trust; Cara Stanko, Trust; Chris Stanko, Trust; Michael Stanko, Trust; Elizabeth Stanko, Trust; School of Gymnastics, Inc., a defunct Nebraska corporation; River Enterprises Trust; Red Barn Trust; Scotty Trust; Stanko Family Trust; Stanko Family, Inc.; Ted Daggett; Robert Spurgeon; Bruce Scott, Defendants.

Nos. 93–2539, 94–1055, 93–2543 and 94–2785.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1994.

Decided March 13, 1995.

Rehearing Denied in Nos. 93–2539, 93–2543 and 94–1055 April 20, 1995.

Robert G. Simmons, Scottsbluff, NE, argued, for Jeanne A. Stanko in Nos. 93–2539 and 94–1055 and School of Gymnastics in No. 93–2543.

Dean Stanley Forney, Alliance, NE, argued, for Jeanne A. Stanko and Sheridan Enterprises in No. 94–1055.

John Sante Evangelisti, Denver, CO, argued, for Concepcion Giove.

Before FAGG, HANSEN, MORRIS SHEPPARD ARNOLD, Circuit Judges.

HANSEN, Circuit Judge.

These consolidated appeals arise from the district court's[1] rulings on three separate execution actions brought by plaintiff, Concepcion Giove, in an attempt to collect on a prior judgment she holds against Rudy Stanko. Giove brought the first two execution actions on the authority of a fraudulent conveyance judgment she obtained against the defendants. Giove prevailed in these two actions. Defendant School of Gymnastics (School) appeals the district court's ruling on a writ of execution that allows Giove to enforce the fraudulent conveyance judgment against real property in which the School claims an interest. Defendant Sheridan Enterprises Trust (Sheridan) appeals the district court's ruling on another writ of execution that allows Giove to enforce the fraudulent conveyance judgment against property

which Sheridan argues is exempt from execution under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1055 and 1056. In her third execution action, Giove sought to equitably execute on her judgment against Rudy Stanko in order to reach the proceeds of a promissory note Rudy Stanko transferred to defendant, Jeanne Stanko. Giove appeals the district court's adverse ruling on the third collection action. We affirm the district court's decision in each of these actions.

## I.

The complicated factual record underlying these actions has previously been described in great detail. The district court gave a full account of the facts in its ruling setting aside the fraudulent conveyances, and we adopted that factual statement in full when we affirmed the district court in that case, *see* *Giove v. Stanko,* 977 F.2d 413, 415 (8th Cir. 1992). Accordingly, we provide only a brief synopsis of the facts particularly relevant here.

Rudy Stanko acquired extensive real and personal property holdings prior to running into trouble with federal authorities and his creditors. Part of his holdings included Cattle King Packing Company in Denver, Colorado, which he owned and operated until it closed in 1984, after encountering a number of problems with the United States Department of Agriculture. Giove was an employee at Cattle King until she was constructively discharged. She brought a Title VII suit against Rudy Stanko which resulted in a default judgment being entered against him. Giove was awarded damages of $824,650.59.

Giove attempted to collect on the Title VII judgment with limited success, finding that Rudy Stanko had divested himself of most of his assets by transferring them to his wife, Jeanne Stanko, to various trusts, and to other businesses and individuals. On May 9, 1989, Giove brought a fraudulent conveyance action against Jeanne Stanko, the trusts, and other individuals in an attempt to collect on

1. The Honorable Warren K. Urbom, Senior United States District Judge for the District of Nebraska.

her judgment against Rudy Stanko. The district court found for Giove and set aside all challenged conveyances made on or after May 9, 1985. The district court also found that all conveyances made prior to May 9, 1985, were outside Nebraska's four-year statute of limitations on fraud actions and could not be set aside. The district court entered judgment, setting out with particularity all of the property that was subject to the fraudulent conveyance judgment. We affirmed the fraudulent conveyance judgment on appeal. *Giove v. Stanko,* 977 F.2d 413 (8th Cir.1992)

Giove then began collection proceedings against the property that was subject to the fraudulent conveyance judgment. Giove filed separate applications for writs of execution on the various pieces of property. The School filed an objection to Giove's execution action on parcels of real property referred to in the judgment as "Lots 8, 9, and 10, Block 2, City Addition to the City of Scottsbluff, Scotts Bluff County, Nebraska" (hereinafter "Lots 8, 9, and 10"). (Appellant's App. at 1 (No. 93–2539).) The School asserted that when the district court set aside the transfer of the property from the School to Jeanne Stanko, the property reverted back to the possession of the School. The School argued that it is not a judgment debtor to Giove and that Giove cannot satisfy her judgment against Rudy Stanko with the School's property.

Sheridan filed a similar objection to Giove's application for a writ of execution against the proceeds of a life insurance policy that was purchased with funds conveyed from Rudy Stanko to Sheridan. Sheridan asserted that when the district court set aside that conveyance, the property reverted back to Rudy Stanko and that the life insurance policy, purchased with funds from an ERISA pension plan, is exempt in Rudy's hands from execution by creditors. In separate orders, the district court overruled the School's objection to the issuance of a writ of execution on Lots 8, 9, and 10, and overruled Sheridan's objection to the issuance of the writ of execution on the life insurance policy.

Giove subsequently filed a motion seeking equitable execution on the Title VII judgment against Rudy Stanko to reach the proceeds of a $3,000,000 promissory note that Rudy Stanko had transferred to Jeanne Stanko. The district court found that the transfer had occurred before May 9, 1985, and that the equitable execution motion was barred by the four-year statute of limitations on fraud actions. The School, Sheridan, and Giove all filed separate appeals. We consolidated the appeals because of their common factual background.

## II.

The first issue we address is whether these appeals are from final orders of the district court. Giove has argued that the appeals by the School and Sheridan are premature because the district court has not resolved Giove's collection actions against all of the separate defendants and pieces of property and because the district court has not certified these appeals to us under Federal Rule of Civil Procedure 54(b).[2]

"Our jurisdiction extends only over final judgments, *see* 28 U.S.C. § 1291 (1988); however, the concept of finality is elusive and often difficult to ascertain." *Miller v. Alamo,* 975 F.2d 547, 549 (8th Cir.1992). We determine finality by using practical instead of technical considerations and give special attention to the competing interests at the heart of every finality question—limiting inconvenient and expensive piecemeal appeals versus denying justice by delaying the appeal. *Id.*

> However, the concern about limiting piecemeal appeals is diminished when the appeal involves post-judgment orders. One reason is that the underlying dispute has already been settled, and there is little danger that prompt appeal of post-judgment matters will cause confusion, duplicative effort, or otherwise interfere with the trial court's disposition of the underlying merits. Another reason for downplaying the courts' traditional concern over piecemeal appeals is that further proceedings are not likely to produce an order that is any more final than the one at issue.

**2.** Although not argued here, under Giove's theory   her own appeal would be premature as well.

*Id.* at 550 (citations omitted). This case, like *Miller v. Alamo,* presents a "prime example" of a case where further proceedings will not produce an order that is any more final on the issues presented here. *See id.* These "mini-dispute[s] [are] over insofar as the district court is concerned." *Id.* In *Miller v. Alamo,* we noted that the decision was final even though the district court had not decided a variety of "still lingering issues" because those determinations were not necessary to decide the issues presented on appeal. *Id.* at 549–50. The same principle applies here. The collection actions pending against all of the separate defendants and pieces of property will not affect the resolutions of the claims now before us. Accordingly, we conclude that the issues before us are final and that we have jurisdiction to consider the merits of the appeals.

### III.

Because the School's and Sheridan's appeals share a critical common argument, we will address them together. In a diversity case, we review the district court's interpretation of state law de novo. *See Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). Both the School and Sheridan base their arguments on the assumption that under Nebraska law, when a fraudulent conveyance is set aside the conveyance is treated as though it never occurred and the property fraudulently conveyed reverts back to the party that made the conveyance. The School argues that Lots 8, 9, and 10, reverted back to the School which is not a party to the judgment Giove holds against Rudy Stanko. Sheridan argues that the funds used to purchase the life insurance policy reverted back to Rudy Stanko and that because Rudy Stanko originally received the funds from an ERISA-qualified pension, the life insurance policy is exempt under ERISA from execution by Rudy Stanko's creditors. Accordingly, both the School and Sheridan assert that they have no liability to Giove.

Nebraska law does not support the premise of the arguments made by the School and Sheridan. Nebraska courts have unequivocally held that in a fraudulent con-

veyance action "a voluntary conveyance is good as between the parties to the instrument and void *only* as to the creditor or creditors who attack it." *United States Nat'l Bank of Omaha v. Rupe,* 207 Neb. 131, 296 N.W.2d 474, 476 (1980) (emphasis added); *see also Lammers Land and Cattle Co. v. Hans,* 213 Neb. 243, 328 N.W.2d 759, 764 (1983) (relying on *Rupe* ). The fraudulent conveyance is not annulled, and instead the property is made "subject to a lien of the defrauded creditors." *Rupe,* 296 N.W.2d at 476. The district court's judgment in the fraudulent conveyance action followed Nebraska law by leaving the fraudulently conveyed property in the hands of the transferees and making the property subject to Giove's collection efforts. (Appellant's App. at 1–2 (No. 93–2539).)

Both Nebraska law and the district court's prior judgment require us to treat the property Rudy Stanko fraudulently conveyed as remaining with the parties who received it subject to Giove's lien and collection efforts. Given this authority, School's and Sheridan's remaining arguments about why Giove cannot reach the property after it reverted to the parties making the original conveyances are without merit because they rely on an erroneous premise. Accordingly, we affirm the judgments of the district court that overruled both the School's and Sheridan's separate attempts to block Giove's execution actions.

### IV.

Giove appeals the district court's decision denying Giove's motion for equitable execution on the proceeds of a promissory note that Rudy Stanko transferred to Jeanne Stanko on September 19, 1984. Giove argued below and here on appeal that she can reach the property under Nebraska law by using an equitable assets creditor's bill. The district court found that Giove's attempt to collect on the proceeds of the promissory note by using this type of creditor's bill was barred by the same four-year statute of limitations, *Neb.Rev.Stat.* § 25–207(4), that barred her from reaching this property in the fraudulent conveyance action. Giove contends that her creditor's bill action is

governed by the more liberal limitations for executions on judgments found at *Neb.Rev. Stat.* § 25–1515, which essentially provides creditors five years from the date of judgment to execute against the property of the debtor.[3]

The Supreme Court of Nebraska addressed a similar issue in *First Nat'l Bank in Mitchell v. Daggett,* 242 Neb. 734, 497 N.W.2d 358 (1993). The Supreme Court of Nebraska indicated that in order to determine which statute of limitations applies, a court should first determine the nature of the theory the creditor is asserting to reach the property under the equitable assets creditor's bill. *See id.,* 497 N.W.2d at 365. Where the creditor's bill is based on a fraud theory, the four-year limitation on fraud actions applies; but where the creditor's bill is based on a "non-fraud ground" (and no other statute of limitations is applicable), then the limitation period for executions on judgments applies. *See id.* Thus, in order to determine whether the district court was correct in holding that the four-year limitation on fraud actions barred Giove's equitable assets creditor's bill action, we must determine the nature of, and theory underlying, the creditor's bill Giove is pursuing.

The Supreme Court of Nebraska has described creditor's bills as follows:

> There are two classes of creditors' bills, one to reach the equitable assets or property of the debtor on which an execution at law cannot be levied; the other in aid of an execution at law, as to set aside an incumbrance or a transfer of property made to defraud creditors.

*Daggett,* 497 N.W.2d at 362 (quoting *Thies v. Thies,* 111 Neb. 805, 198 N.W. 151, 152 (1924)) (other citation omitted). Giove has made clear that she is pursuing only the first type of creditor's bill—which she and the Nebraska Supreme Court refer to as an "equitable assets" creditor's bill. (Appellant Giove's Reply Br. at 2 (94–2785)); *Daggett,* 497 N.W.2d at 362 (referring to the first type

of creditor's bill as "an 'equitable assets' creditor's bill").

There are three requirements for an equitable-assets creditor's bill. First, the creditor must have a judgment against the debtor; second, the creditor must 'allege and show that he has exhausted his remedy at law,' i.e., the creditor must show that execution has not satisfied the judgment; and finally, the debtor must have some interest in property that the creditor is unable to reach through execution.

*Daggett,* 497 N.W.2d at 362 (citing *Thies,* 198 N.W. at 152). We will assume, for the purposes of simplifying discussion of this issue only, that Giove has satisfied the first two requirements. Giove argues that the third requirement is satisfied because she contends that the debtor, Rudy Stanko, retains an equitable interest in the promissory note. Giove points out that even though the district court did not set aside the transfer, finding that it was barred by the statute of limitations, the district court did find that Rudy Stanko and Jeanne Stanko made the transfer in fraud of creditors. Given that finding, Giove asserts that Rudy Stanko should be deemed in equity to retain an interest in the promissory note reachable under an equitable assets creditor's bill to prevent unjust enrichment of the parties perpetrating the fraud. *See* (Appellant Giove's Br. at 12 (No. 94–2785) (Giove stating that her "motion was based on the court's January 10, 1991 finding that the promissory note was transferred to defendant Jean A. Stanko by Rudy Stanko in fraud of creditors and that defendant Jean A. Stanko was a knowing participant in the fraud")); (Appellant Giove's Reply Br. at 9 (No. 94–2785) ("The trial courts [sic] finding that the conveyance of the three (3) million dollar promissory note was done with an intent to defraud creditors means that, as to the judgement [sic] creditor Giove, the legal as well as the equitable title interest to that note remains in debtor Rudy Stanko for the

---

**3.** The limitation period for executions on judgments provides that if execution is not "sued out within five years from the date of any judgment" or if five years passes between the last execution and the filing of a new one, the judgment becomes dormant and ceases to provide a lien on the debtor's estate. *Neb.Rev.Stat.* § 25–1515. Giove argues that because she attempted to execute on this property less than five years after she obtained her judgment against Rudy Stanko, the action is not barred.

purpose of satisfying his debts even though the transfer can not be set aside at law")).

We conclude that Giove's equitable assets creditor's bill is premised on a fraud theory and, therefore, is governed by Nebraska's four-year limitation on fraud actions. Giove has specifically and repeatedly asserted that the district court's finding that Rudy Stanko's transfer of the promissory note to Jeanne Stanko was fraudulent is the reason that she brought the creditor's bill action and is the reason that the third element of an equitable assets creditor's bill is satisfied in this case. She argues that Rudy Stanko should be deemed as a matter of equity to retain an interest in the promissory note to prevent him and Jeanne Stanko from unjustly benefiting from their fraudulent conduct. It is readily apparent to us that her equitable assets creditor's bill depends entirely on the fraudulent conduct of Rudy and Jeanne Stanko.

Giove argues that we should reach the same result as *Daggett*, where the Supreme Court of Nebraska concluded that the creditor's bill action was controlled by the statute of limitation for execution on judgments. In *Daggett*, however, the Nebraska Supreme Court reached that conclusion only after it found that the creditor had asserted a valid "non-fraud ground" for making the property subject to its judgment—namely the invalidity of a trust to which the property was conveyed. 497 N.W.2d at 365. Giove has argued no ground other than fraud for satisfying the third element of the equitable assets creditor's bill test and thus has failed to assert a "non-fraud ground" for making the property subject to her judgment.[4] We hold that the district court committed no error in concluding that the same four-year limitation that bars Giove from setting aside the conveyance as a fraudulent conveyance likewise bars her from reaching the proceeds of the promissory note using an equitable assets creditor's bill.

### V.

For the foregoing reasons, we affirm the judgments of the district court in each of these cases.

---

4. In her reply brief she argued for the first time that if the case were remanded, she could prove that Jeanne Stanko was acting as the alter ego for Rudy Stanko and, therefore, the transfers were invalid on that nonfraud basis. However, we generally do not address issues and arguments asserted for the first time in a reply brief. *Parmenter v. Federal Deposit Ins. Co.*, 925 F.2d 1088, 1093 (8th Cir.1991). Giove has supplied no good reason for departing from our normal rule and considering these assertions.